**W. J. WARREN et al.,**
**Plaintiffs-Appellants,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA et al., and Arkansas Best Freight Systems, Inc., Defendants-Appellees.**

**No. 75–1694.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1976.

Decided Nov. 8, 1976.

James F. Waltz, Cape Girardeau, Mo., for plaintiffs-appellants; Jack L. Oliver, Cape Girardeau, Mo., on brief.

David Leo Uelmen, Milwaukee, Wis., for defendant-appellee, Unions; Clyde E. Craig, St. Louis, Mo., on brief.

Paul Scott Kelly, Jr., Kansas City, Mo., for defendant-appellee, Arkansas Best Freight System; Loyd E. Owen, Jr. and Thomas J. Jones, Jr., Kansas City, Mo., on brief.

Before LAY and WEBSTER, Circuit Judges, and URBOM, District Judge.*

URBOM, District Judge.

This is an action brought by four persons under 28 U.S.C. § 1337 and 29 U.S.C. § 185, also known as § 301 of the Labor-Management Relations Act. The plaintiffs are over-the-road truck drivers. They are former employees of Delta Motor Lines, Inc. (hereinafter Delta), with whom they began service as follows: W. J. Warren, February 24, 1953; J. E. Strickland, April 8, 1956; G. W. Herrington, July 6, 1953; and Charles J. Sitzes, July 6, 1955. Each worked at various locations where Delta had terminals.

On October 11, 1962, the Interstate Commerce Commission granted to the defendant Arkansas Best Freight Systems, Inc. (hereinafter ABF) temporary authority to operate Delta. Full merger was approved by the Interstate Commerce Commission on June 16, 1965, and this was effected on July 6, 1965. All the plaintiffs became and still are ABF employees, now working out of the Cape Girardeau, Missouri, terminal. The thrust of the plaintiffs' claim is that their position on the work preference seniority list at Cape Girardeau does not properly reflect their prior years of service with Delta. They seek damages and restoration of their full company seniority. Suit was brought against ABF for breach of the collective bargaining agreement and against the defendant unions (the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and seven local chapters) for a breach of the duty of fair representation. After a nonjury trial, the district court [1] denied all relief to the plaintiffs.

The plaintiffs now appeal on essentially four grounds:

(1) The district court erred in its failure to find a breach of contract by the defendant ABF;

(2) The district court failed to make adequate findings of fact or conclusions of law with respect to the breach of contract claims of the plaintiff Warren and the damage claims of all the plaintiffs;

(3) The district court erred in its failure to find a breach of the duty of fair representation by the defendant unions; and

(4) The district court abused its discretion when it allowed the defendant unions' answers to requests for admissions to be accepted and filed after the trial had begun.

For the reasons which follow the judgment of the district court will be affirmed.

---

* WARREN K. URBOM, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

## I. STATUTE OF LIMITATIONS

██ The defendants at trial contended that this entire suit is barred by the statute of limitations, and they pursue this contention now.

This court held in *Butler v. Local Union 823, International Brotherhood of Teamsters, etc.*, 514 F.2d 442, 446 (8th Cir. 1975):

Because there is no federal statute of limitations governing § 301 breach of contract actions or governing fair representation actions, the timeliness of such suits is governed by the "appropriate" state statute of limitations.

There, the court applied Missouri's five-year written contract statute of limitations to the union member's dual claims against the employer for breach of contract and against the union for breach of the duty of fair representation. The court held that the cause of action did not accrue until the grievance was rejected, because only then had the necessary condition precedent to the suit—rejection of the grievance due to unfair representation—taken place.

The instant action also arose in Missouri, and the five-year written contract statute of limitations is applicable. The grievance upon which this lawsuit is based was filed jointly by the plaintiffs on August 20, 1971. The lawsuit was filed on October 18, 1973; Sitzes was added as a plaintiff on April 10, 1974.

The contention of the union appellees centers around the plaintiff Warren's having previously filed a grievance protesting his seniority standing. That was denied on April 3, 1968. The unions contend (1) that the plaintiff Warren was barred as of April 3, 1973, from bringing a § 301 suit in federal court related to the claims denied in his 1968 grievance and that he should not be able to extend this date by refiling the same grievance, and (2) that the denial of plaintiff Warren's grievance on April 3, 1968, commenced the running of the statute of limitations as to all the other plaintiffs as well.

As stated in *Butler, supra,* the cause of action does not accrue until the necessary condition precedent to the suit—rejection of the grievance due to unfair representation—takes place. Here, that rejection due to unfair representation did not take place until 1971. While the contract claims may have been similar to those raised in 1968, the acts forming the alleged breach of the duty of fair representation necessarily differ; those acts did not occur until 1971. The problem is thus that alluded to in *Butler,* 514 F.2d at 450, n. 12:

The one remaining residue of *McMahon v. United States,* * * * is that there apparently is no provision in the collective bargaining agreement requiring the employee to submit a grievance within any time limit. Thus, there is a possibility that an employee will be able to extend the time limits of the statute by delaying his filing of a grievance. This power of the employee does not present a serious problem, however, for the union and the employer may agree by contract to a reasonable fixed time limit within which grievances must be filed.

Thus, so long as the union member may timely file a grievance, he may properly claim that the union has breached its duty of fair representation in handling that grievance. And, so long as the issue of that breach of duty of fair representation is before the court, *Butler* holds that the breach of contract claim on which that grievance is based is timely raised.

There is no indication here that the 1971 grievance was considered as not timely filed. Furthermore, the applicable collective bargaining agreements do not state any time limit for filing grievances. Since the plaintiffs' claims emanate from the denial of the 1971 grievance, they are not barred by the statute of limitations.

## II. STATUS OF BREACH OF CONTRACT CLAIMS

██ There can no longer be any doubt that where the parties to a collective bargaining agreement provide therein for binding arbitration of disputes between the employee and employer, the employee cannot

sidestep that grievance machinery. Unless he has attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer will be dismissed. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Only when the union has breached its duty of fair representation to the union member may that member bypass the collective bargaining agreement procedure and proceed against the employer for the breach of contract claim. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The Supreme Court of the United States in *Hines, supra,* faced the issue of what measure of finality would be given to the grievance procedure when a dissatisfied union member alleges a breach of the duty of fair representation by the union. The court said:

> * * * In our view, enforcement of the finality provision where the arbitrator has erred is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings. * * * 424 U.S. at 571, 96 S.Ct. at 1060.

Earlier the court said:

> * * * The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's

breach also removes the bar of the finality provisions of the contract. 424 U.S. at 567, 96 S.Ct. at 1058.

Absent such a showing, the finality provisions of the collective bargaining contract must be honored and the employees must be foreclosed from relitigating that dispute. It is with this in mind that we approach the contract claims against ABF.

The plaintiffs urge that they have established the necessary breach of the duty of fair representation by two means:

A. The unions have admitted it by their failure to file timely denials to the plaintiffs' requests for admissions; and

B. The evidence adduced at trial establishes it.

A. *Failure of defendant unions to file timely denial to the plaintiffs' requests for admissions as to the unions' breach of the duty of fair representation.*

■ The plaintiffs' requests for admissions were filed on April 1, 1974, together with an amended complaint which added Charles Sitzes as one of the plaintiffs. On that same day identical requests were made on the defendant ABF. ABF obtained an extension of time in which to respond to the requests for admissions and did so within the proper time limit in a document filed May 10, 1974. Trial began May 15, 1974. The union represented at trial that its answers to requests for admissions had been mailed out of Washington on May 13, 1974; they were received and filed on May 16, 1974.[2] Counsel stated at trial that he had relied on the 45-day provision of Rule 36(a)

---

2. The denial referred only to requests numbered 28 and 29 of the plaintiffs' requests for admissions. Those two requests are:

28. That defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and affiliated local unions processed the grievances filed on behalf of plaintiffs, so that they were deliberately designed to give the plaintiffs the false impression that a sincere effort was being made by defendant union to resolve their seniority question and secure plaintiffs full company seniority based on total years of service.

29. That defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America through their duly authorized business representative, promised plaintiffs and each of them that defendant unions would resolve their seniority question and secure plaintiffs full company seniority based on total years of service.

It is a failure to deny timely these two requests which prompts the plaintiffs to argue that admissions should be declared.

of the Federal Rules of Civil Procedure in not responding until that time. Rule 36(a) states:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of *45 days after service of the summons and complaint upon him.* (Emphasis added)

Because the 45-day provision of the rule specifies "summons and complaint", it seems clear that the defendant unions were simply wrong in their reading of the rule.

The plaintiffs moved at trial that the requests for admissions be deemed admitted. The trial judge initially granted this request and deemed questions 28 and 29 admitted by the unions. There was a question at that time whether the admissions applied equally to ABF, who had timely filed a denial to the same requests for admissions. The trial judge indicated near the end of the first day of trial that he would discuss the matter with counsel privately the next day. The judge meanwhile did not foreclose inquiry into the areas covered by questions numbered 28 and 29, as some of the matters therein went to the issue of damages, and allowed considerable testimony about the subjects dealt with by questions 28 and 29.

In discussing this ruling in a post-trial opinion, the district judge said:

* * * Since the defendant Unions' answers to the request for admissions were not timely filed, plaintiffs at trial sought to have the request for admissions deemed admitted. Since such an admission went to the merits of the lawsuit, the court allowed the defendant Unions to introduce evidence. In light of the

Court's later research on the subject, the Court is of the opinion that its action taken was proper, and therefore, the request for admissions of the plaintiffs will not be deemed admitted against the defendant Unions. *Pleasant Hill Bank v. United States of America*, 60 F.R.D. 1 (W.D.Mo., 1973).

While there is some confusion in the court's ruling, the plaintiffs in their brief state:

The court later amended its ruling to allow the Unions to present their evidence in contradiction of the request subject to the plaintiffs' objection. The issue was fully litigated. However, the plaintiffs were under the impression that the Court had reached the determination on bad faith. * * *

The court's amendment does not appear in the transcript, but it is fair to say, as plaintiffs agree, that the issue was fully litigated.

■ Furthermore, there was every indication in advance of the trial that the issues raised by requests 28 and 29 were to be controverted issues at trial. As noted previously, the defendant unions had specifically denied the requests for admissions made to them. Additionally, the defendant unions filed an answer to the amended complaint on April 10, 1974. One of the allegations in the amended complaint was worded identically with questions 28 and 29; the answer denied those allegations. Finally, the issues presented by the requests for admissions numbered 28 and 29 were identical to allegations in the original complaint, which were timely denied by the defendants, and this position was maintained throughout all the pretrial proceedings.

■ This court is in agreement with the case cited by the trial court, *Pleasant Hill Bank v. United States, supra*:

* * * To allow a late filing of answers [to a request for admissions] is the equivalent of allowing a party to withdraw admissions made by operation of Rule 36(a). Therefore, the Court adopts the test for permitting withdrawal of an

admission announced in Rule 36(b) as the standard to determine whether late filing of answers should be permitted here:

> [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtains the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. 60 F.R.D. at 3.

*Cf. United States v. Cannon*, 363 F.Supp. 1045 (D.Del.1973); Finman, "The Request for Admissions in Federal Civil Procedure", 71 Yale L.J. 371, 432–33 (1962).

The plaintiffs suffered no prejudice in being forced to pursue the action on the merits. Accordingly, we find no abuse in the trial court's refusal to deem these matters admitted.

B. *Evidence at trial on the breach of the duty of fair representation.*

The district court found that at all times material to this lawsuit ABF and the unions were signatories to a collective bargaining agreement known as the National Master Freight Agreement and various supplemental agreements thereto, including the Central States Area Over-The-Road Motor Freight Supplemental Agreement, the Southern Conference Area Over-The-Road Motor Freight Supplemental Agreement (the Southeastern Agreement), and the Southern Conference Area Over-The-Road Motor Freight Supplemental Agreement (the Southwestern Agreement). The first such National Agreement and supplemental agreements thereto covered the period from February 1, 1964, to March 31, 1967; the second, from April 1, 1967, to March 31, 1970; and the third, from April 1, 1970, to June 30, 1973.

The plaintiffs prosecuted their grievances pursuant to these collective bargaining agreements. Under the agreements the Joint State Committee is given jurisdiction over such disputes and grievances. It is composed of an equal number of persons appointed by the employer and by the un-ion. The Central States Supplemental Agreement states (and the other supplemental agreements state substantially the same):

> It shall be the function of various committees referred to above [including the Joint State Committee] to settle disputes which cannot be settled between the Employer and Local Union in accordance with the procedures established [herein].
>
> \* \* \* \* \* \*
>
> Disputes shall first be taken up between the employer and the Local Union involved. Failing adjustment by these parties, the following procedures shall then apply:
>
> (a) Where a Joint State Committee, by a majority vote, settles the dispute, no appeal may be taken to the Joint Area Committee. Such a decision shall be final and binding on both parties.

■ It is clear that these grievance procedures of the Joint State Committee, though not called arbitration, are of the type to which the holdings of *Vaca, supra,* and *Hines, supra,* fully apply. The actions of such joint committees have consistently been considered just as final and binding as if the actions had been called arbitration. *Truck Drivers Union v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 295 (7th Cir. 1975).

The district court's findings of fact and conclusions of law on the issue of the breach of duty of fair representation are:

> 55. On March 13, 1968, plaintiff Warren filed a grievance with Local Union No. 574, in which he requested his full company seniority for bidding purposes.
>
> 56. That grievance was heard and decided as case No. 35 on April 3, 1968, by the Missouri-Kansas Joint State Grievance Committee.
>
> 57. The claim of plaintiff Warren for seniority was denied on April 3, 1968.
>
> 58. Other grievances were filed by plaintiffs Strickland, Herrington and

Sitzes seeking their original Delta Motor Lines hiring date as their seniority date for bidding purposes. Those grievances were all denied.

59. The evidence adduced at trial shows that the plaintiffs were all adequately represented by the Union and the locals at the respective grievances which were filed by the plaintiffs.

\* \* \* \* \* \*

The plaintiffs have filed grievances concerning the matter of seniority, with adverse determinations being returned against all the plaintiffs. There is no evidence before the court to indicate that the representation given to the plaintiffs by the respective defendant Local Unions was in any way less than that given to other union members seeking to have grievances filed.

The plaintiffs' claim is that the unions have acted so as to give the false impression that they were properly handling their grievances. The plaintiffs point to various instances which support this proposition. Essentially, the plaintiffs now seek a review of the evidence considered by the trial court in reaching its conclusion to the contrary. This court must accept the trial court's findings of fact, unless they can be said to be clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure; *Brown v. Scott*, 454 F.2d 693 (8th Cir. 1972); *Wellner v. Minnesota State Junior College Board*, 487 F.2d 153 (8th Cir. 1973).

The mere fact that grievances are terminated adversely to the union members does not mean that there has been a breach of fair representation to the union members. Congressional policy favoring expert centralized administration of collective bargaining agreements, when coupled with the detailed bargained-for grievance procedures here, means that the verdicts rendered by such procedures should not be lightly overturned by the court. *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes, supra.*

This court has examined the transcript herein and finds substantial support for the conclusions reached by the trial court on the matter of breach of the duty of fair representation. The findings by the court are not clearly erroneous.

The decision of the Joint State Committee was intended to be final and binding on all parties. No breach of duty of fair representation by the unions has been established, so the finality of that decision must be honored. Accordingly, we have no occasion to consider the breach of contract claims raised by the plaintiffs against ABF.

## III. FAILURE TO MAKE ADEQUATE FINDINGS OF FACT AND CONCLUSIONS OF LAW

Finally, the plaintiffs urge that the district court failed to make adequate findings of fact and conclusions of law with respect to the breach of contract claims of the plaintiff Warren and the damage claims of all the plaintiffs. Under the circumstances, the court was not required to confront those issues, because the plaintiffs failed to pass the initial hurdle of proving a breach of the duty of fair representation.