Michael **CARTER; Stefan Denson; and American Federation of Government Employees, Local 3399, AFL–CIO, Appellants,**

v.

**J.L. KURZEJESKI, V.A. Hospital Director, and Robert Nimmo, Appellees.**

No. 82–1630.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1983.

Decided May 5, 1983.

As Revised June 1, 1983.

Mitchell J. Notis, Staff Counsel, James R. Rosa, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for appellants.

Robert G. Ulrich, U.S. Atty., Larry D. Coleman, Asst. U.S. Atty., Kansas City, Mo., for appellees.

Before HEANEY, McMILLIAN and AR-
NOLD, Circuit Judges.

HEANEY, Circuit Judge.

Appellants Michael Carter, Stefan Den-
son, and the American Federation of
Government Employees, AFL–CIO, Local
3399 [Union], appeal from the district
court's order, 540 F.Supp. 396, dismissing
their action for lack of subject matter juris-
diction. We affirm.

## I. BACKGROUND

The facts necessary for our decision re-
garding district court jurisdiction are undis-
puted. In 1981, appellants Carter and Den-
son were employees at the Veterans Admin-
istration Hospital in Columbia, Missouri
[Hospital]. Carter was president of the Un-
ion representing a unit of employees at the
Hospital. Sometime in 1981, Denson be-
came chief shop steward for the Union.
Both men were active union members, both
filed numerous unfair labor practices
against the Hospital, and both participated
in various grievance proceedings against
the Hospital.

On November 3, 1981, the Hospital issued
a notice of proposed removal to Denson.
The notice alleged that Denson did not per-
form certain required patient services, in-
cluding respirator "ventilator" checks, in his
capacity as a respiratory therapist, or at
least failed to properly record the perform-
ance of those services. The Union filed a
grievance contesting this proposed action in
early December of 1981. Attached to the
grievance were certain "ventilator check
sheets" which had been delivered to Carter
anonymously through the Hospital's in-
house mail, which reflected deficiencies by
other respiratory therapists similar to those
allegedly committed by Denson, and which
the Hospital asserted were confidential pa-
tient records. Carter denied having filed
that grievance although someone signed his
name to it. The Hospital discharged Den-
son on December 18, 1981.

On February 24, 1982, the Hospital issued
a notice of proposed removal to Carter.
The notice alleged that Carter improperly
"accessed" certain confidential patient rec-
ords—*i.e.,* the ventilator check sheets at-
tached to Denson's grievance—and that he
assaulted a management official during an
altercation concerning the service of a man-
agement grievance to Carter on December
18, 1981, while Carter was working. Carter
received a notice of removal on March 12,
1982, effective March 29, 1982. On March
24, 1982, Carter filed a grievance contesting
his pending discharge.

On March 24 or 25, 1982, the Union filed
a charge with the Federal Labor Relations
Authority [FLRA] claiming that the Hospi-
tal's actions against Denson and Carter con-
stituted unfair labor practices. In addition,
on March 26, 1982, Denson, Carter, and the
Union filed their complaint in the present
action in the United States District Court
for the Western District of Missouri against
J.L. Kurzejeski, the Hospital's director, and
Robert Nimmo, the Administrator of the
Veterans Administration.[1] They sought de-
claratory and injunctive relief from Den-
son's discharge and Carter's pending dis-
charge and any other relief necessary to
serve justice. They asserted that the dis-
trict court had jurisdiction under 28 U.S.C.
§ 1331 (Supp. V 1981), 28 U.S.C. §§ 2201 &
2202 (1976 & Supp. V 1981), and 5 U.S.C.
§§ 701–706 (1976). Upon appellants' mo-
tion, the court granted a temporary re-
straining order barring Carter's discharge.

The Veterans Administration officials
then moved to dismiss the action for lack of
subject matter jurisdiction and failure to
state a claim on which relief could be grant-
ed. The gravamen of this motion was the
allegation that the appellants failed to "ex-
haust" contractual and administrative rem-
edies. The appellants disputed this motion
on the ground that, even assuming "exhaus-

1. Based on the nature of this action, the relief
sought, and the arguments made before the
district court and this Court, we assume that
the appellants are suing Kurzejeski and Nimmo
in their capacities as officials in the Veterans

Administration, rather than suing them for
damages as individuals directly under the first
amendment, *see Bivens v. Six Unknown Feder-
al Narcotics Agents,* 403 U.S. 388, 91 S.Ct.
1999, 29 L.Ed.2d 619 (1971).

tion" is required prior to the exercise of district court jurisdiction over a contractual or unfair labor practice claim, their complaint also alleged a violation of first amendment rights—the rights of federal employees to unionize and participate in union activities—which was immediately reviewable as a federal question under 28 U.S.C. § 1331 (Supp. V 1981).

On May 11, 1982, the district court decided that, since the Civil Service Reform Act of 1978 preempts the entire field of unfair labor practices in the federal sector, Carter and Denson had their exclusive means of redress under that legislation. See 5 U.S.C. §§ 7116(d) & 7121(e)(1) (Supp. V 1981). The court further held that the Union had an exclusive remedy available from the FLRA under the Civil Service Reform Act which barred the exercise of independent federal court jurisdiction on its claim.[2] The court then dismissed appellants' complaint.[3]

## II. INDIVIDUAL EMPLOYEES' CLAIMS

Carter and Denson base their individual claims for relief primarily upon the statutory provisions barring anti-union reprisals against union members in the Civil Service Reform Act and the constitutional protections of union membership and participation

implied from the first amendment. On appeal, they contend that the dismissal of their constitutional claims was improper because the district court had subject matter jurisdiction by virtue of 28 U.S.C. § 1331 (Supp. V 1981).

Initially, we agree that Carter and Denson, as federal employees, have a constitutionally protected right to join the Union implied from the freedom of assembly clause in the first amendment. *Greminger v. Seaborne,* 584 F.2d 275, 278 (8th Cir. 1978); *Norbeck v. Davenport Community School District,* 545 F.2d 63, 67 (8th Cir. 1976), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 222 (1977); *American Federation of State, County & Municipal Employees v. Woodward,* 406 F.2d 137, 139 (8th Cir.1969). That right would be meaningless unless we also recognized the employees' right to participate in union activities; in addition, some participation in union activities might be protected as traditional speech without regard to the freedom of assembly clause. In any event, we hold that these individuals clearly allege conduct which violates the constitutional protections of union membership and participation.[4]

We cannot agree, however, that the existence of a constitutional right automatically exempts a claim based on the violation of

2. The Union had filed an unfair labor practice charge with the FLRA at the time the district court issued its order on the motion to dismiss. After that order, the Acting Regional Director of the FLRA notified the Union that she would not issue an unfair labor practice complaint since Carter and Denson had remedies available under the negotiated grievance procedure and possibly under the statutory appellate procedure for review of federal discharges by the Merit Systems Protection Board [MSPB], see 5 U.S.C. §§ 7513 & 7701 (Supp. V 1981), and the Civil Service Reform Act prevents unfair labor practice charges when such alternatives are available and/or used. See 5 U.S.C. §§ 7116(d) & 7121(e) (Supp. V 1981). This action by the Acting Regional Director is irrelevant to our decision, however, because we only address the question of the existence of federal district court jurisdiction in this case, not whether the FLRA should exercise its jurisdiction under applicable statutory law.

3. The court's dismissal had the effect of dissolving its temporary restraining order barring

Carter's discharge, and the Hospital in fact discharged him soon after the court's order.

4. Carter's affidavit, filed in opposition to the motion to dismiss, also alleges that he and Denson appeared on a radio talk show in December of 1981 to discuss anti-union animus and racial problems at the Hospital. The pleadings and arguments made by the appellants do not link this appearance to either man's discharge, however. Therefore, we address their constitutional claims only to the extent that their union membership and participation is protected by the first amendment; we do not discuss the measure of constitutional protection to be given their talk show comments nor whether the pleadings should be amended to allege that these comments were a "substantial" or "motivating" factor in their discharges. See Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

that right from the exclusivity of arbitral or administrative review procedures, which provide for some judicial review, recognized and created by Congress.[5] In the Civil Service Reform Act of 1978, Congress created a comprehensive procedural scheme to regulate labor-management relations in the federal sector. That scheme is particularly appropriate to review claims of improper discharge based on union membership or participation such as those brought by Carter and Denson.

■ Carter and Denson do not dispute that their discharges in this case are grievable matters under the collective bargaining agreement between the Union and the Hospital; both men invoked the contractual grievance procedure prior to filing the instant action in district court. Moreover, a federal employer discharging an employee solely out of anti-union animus commits an unfair labor practice under the Civil Service Reform Act. *See* 5 U.S.C. §§ 7116(a)(1), (2), (4) & (8) (Supp. V 1981). Finally, federal nonprobationary employees discharged other than "for such cause as will promote the efficiency of the service," 5 U.S.C. §§ 7512 & 7513(a) (Supp. V 1981), can appeal that adverse action to the Merit Systems Protection Board [MSPB]. *See* 5 U.S.C. §§ 7512, 7513(d) & 7701 (Supp. V 1981).

Given these three avenues to review a federal discharge improperly based on union membership or participation, the Civil Service Reform Act contains a detailed procedure explicitly restricting the exercise of an aggrieved employee's right of review.

First, 5 U.S.C. § 7116(d) (Supp. V 1981) provides that "[i]ssues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section." Because Carter and Denson could have contested their discharges through the MSPB "appeals procedure," section 7116(d) precludes them from filing an unfair labor practice on the same issue.

Secondly, 5 U.S.C. § 7121(e)(1) (Supp. V 1981) provides that removal matters appealable to the MSPB "which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures [of the MSPB] * * or under the negotiated grievance procedure, but not both." Because Carter and Denson elected to follow the negotiated grievance procedure, section 7121(e)(1) bars separate appellate review by the MSPB.

The Civil Service Reform Act further states that any negotiated grievance procedure in the federal sector must include a provision for "binding arbitration [of unresolved disputes] which may be invoked by either the exclusive representative or the agency." 5 U.S.C. § 7121(b)(3)(C) (Supp. V 1981). Any arbitration award rendered in lieu of a decision by the MSPB, *e.g.*, where an aggrieved employee elects the grievance procedure over MSPB review, is subject to judicial review "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f) (Supp. V 1981). That judicial review is now

---

5. The parties characterize this issue as "exhaustion" of contractual and administrative remedies, in the sense that the district court action is "untimely" until contractual or administrative proceedings are completed. *See* 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1350 (1982 Supp.). *Cf. Northern California District Council of Hod Carriers, Building & Construction Laborers, AFL–CIO v. Opinski*, 673 F.2d 1074, 1075–1076 (9th Cir. 1982) ("primary jurisdiction" over unfair labor practice in private sector rests with National Labor Relations Board [NLRB]; district court should stay independent action to compel arbitration pending final disposition of NLRB action). On closer analysis, we find that the real

question is whether the arbitral and administrative procedures recognized and created by the Civil Service Reform Act, which provide ultimately for some judicial review, are the *exclusive* means of redress from a discharge from federal employment based on anti-union animus, thus barring independent federal district court jurisdiction under other statutes altogether. *Cf. Brown v. General Services Administration*, 425 U.S. 820, 824–825, 833–836, 96 S.Ct. 1961, 1963–64, 1968–69, 48 L.Ed.2d 402 (1976) (1972 amendment to Civil Rights Act of 1964 created exclusive remedy for federal employee alleging racial discrimination in agency promotions).

before the United States Court of Appeals for the Federal Circuit, and the reviewing court is authorized to set aside an award which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 7703(b)(1) (West Supp.1983); 5 U.S.C. § 7703(c)(1) (Supp. V 1981).

This procedural framework indicates the care taken by Congress to preserve the rights of aggrieved employees while avoiding the problems of overlapping and inconsistent jurisdiction. Congress obviously recognized multiple possibilities for jurisdiction by arbitrators, the FLRA, the MSPB, and the courts in fashioning this framework. Even though Congress did not directly address every conceivable avenue of relief for federal employees discharged solely for union membership and participation, we are convinced that the comprehensive statutory framework created in the 1978 legislation was intended as an exclusive means of redress in this situation. Carter and Denson cannot totally avoid this framework by invocation of the general federal question jurisdictional statute. *See Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

■ Our conclusion that the Civil Service Reform Act procedure is the exclusive means of redress for Carter and Denson is consistent with established principles of constitutional and labor law in other contexts. For example, the Supreme Court has recognized direct causes of action against individuals for violations of certain constitutional rights. *See, e.g., Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). But the Court will not find such a *Bivens*-type action where "special factors" counsel against such a remedy or where Congress has "provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980) (citations omitted). Congress's ex-

plicit declaration of a substitute remedy need not be in any form of "magic words," but must be a clear expression of congressional intent. *Id.* at 19 n. 5, 100 S.Ct. at 1472 n. 5.

■ In addition, Congress enacted the Civil Service Reform Act of 1978 at a time when the exclusivity of arbitral and administrative review procedures were established principles of private sector labor law. The Supreme Court has expressly held that the general federal policy is that private employees wishing to assert grievances under a collective bargaining contract should do so through the established grievance procedure, where possible. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). "There can no longer be any doubt that where the parties to a collective bargaining agreement provide therein for binding arbitration of disputes between the employee and employer, the employee cannot sidestep that grievance machinery." *Warren v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 544 F.2d 334, 337–338 (8th Cir.1976) (citations omitted). Furthermore, federal courts generally must defer to the exclusive competence of the National Labor Relations Board in matters which are arguably unfair labor practices in the private sector. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). Against this backdrop of labor law in the private sector, it seems highly unlikely that Congress would carefully devise a similar review procedure for federal employees discharged because of union membership and participation, embodying provisions for both arbitral and administrative review of those discharges, which a plaintiff could completely avoid by alleging that a district court has jurisdiction under the general federal question jurisdictional statute.

Carter and Denson raise two major objections to our conclusion that they must contest their discharges under the comprehensive scheme created in the Civil Service Reform Act: (1) that the exclusivity of that review procedure cannot apply to conduct

which is arguably in violation of the United States Constitution; and (2) that the district court has independent jurisdiction over this action under the legal principles announced in *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *United States v. Professional Air Traffic Controllers Organization (PATCO),* 653 F.2d 1134 (7th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). Neither of these objections is persuasive.

First, the constitutionally protected nature of the employees' conduct in this case does not dictate a result contrary to established labor law principles.[6] Carter and Denson argue that declaring the review procedures set out in the Civil Service Reform Act to be the exclusive means of contesting their discharges forces them to effectively waive their first amendment rights to union membership and participation. The same could be said, however, of the denial of a *Bivens*-type action where Congress substituted an alternative, effective remedy; but the Supreme Court has expressly recognized this possibility. *Carlson v. Green, supra,* 446 U.S. at 18–19, 100

S.Ct. at 1471–72. Moreover, the Civil Service Reform Act does not supplant constitutional rights, but merely defines the procedure under which Carter and Denson can effectively assert those rights.

Under the option chosen by the employees in the instant case, that of filing a grievance, the Union will be able to invoke binding arbitration on their behalf, 5 U.S.C. § 7121(b)(3)(C) (Supp. V 1981);[7] further, the legislation explicitly provides for judicial review of any arbitration award rendered in such a case, *id.* § 7121(f). The reviewing court may set aside that award if "not in accordance with law." *Id.* § 7703(c)(1). Thus, any constitutional aspect of the claims of Carter and Denson will not escape judicial scrutiny. *Cf. Borrell v. United States International Communications Agency,* 682 F.2d 981, 989–991 (D.C. Cir.1982) (probationary federal employee who could not appeal determination from Office of Special Counsel [OSC] of the MSPB could bring first amendment action in district court after OSC's final decision). Their constitutional claims will merely be considered under the procedures mandated by the Civil Service Reform Act.[8] This may

---

**6.** This problem has not arisen often in the past because the conduct of a private employer which violates a collective bargaining contract or private sector labor laws rarely also constitutes a constitutional violation, for want of government involvement. *See* Comment, *Labor Law—The Exclusivity Principle in the Public Employment Sector and First Amendment Rights,* 23 N.Y.L.Sch.L.Rev. 132, 138–139 (1977). *But see Buckley v. American Federation of Television and Radio Artists,* 496 F.2d 305, 312 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974) (plaintiff's right to be free of employer-union agreement restricting radio and television appearances to dues-paying union members is question for the National Labor Relations Board regardless of first amendment implications).

**7.** Carter and Denson allege that their constitutional claims might be lost at this stage in the procedure should the Union elect not to pursue their grievances through binding arbitration. Based on the arbitration awards rendered after the district court order in the instant case, these fears are unfounded. We need not decide whether a union's refusal to go to arbitration for a federal employee in future cases, thus potentially cutting off judicial review of the employee's grievance, would mandate a differ-

ent result than that reached in this case. We only note that under such circumstances the employee might have a cause of action against the union directly. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Moreover, the Civil Service Reform Act merely requires that the union and the agency have the right to invoke binding arbitration, 5 U.S.C. § 7121(b)(3)(C) (Supp. V 1981); it apparently does not preclude an agreement which would also give the aggrieved employee a similar right. Finally, Carter and Denson could have elected review before the MSPB and thus would have been assured of judicial review independent of any union participation. *See* 5 U.S.C. § 7703(a)(1) (Supp. V 1981).

**8.** We do not decide what degree of deference must be given to the arbitrator's decision when the employee raises *constitutional issues. Cf. Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974) (Supreme Court leaves open question of weight to be given arbitrator's decision in employment discrimination suit brought after arbitration). We note, however, that arbitrators in the federal sector may be required to give more consideration to "external law," such as the Constitution, than is normally ex-

allow resolution of their dispute without unnecessarily reaching constitutional issues, a "manifestly reasonable" result which Congress could, and did, adopt. *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975) (judicial review of constitutional challenges to Social Security Act provisions may be delayed pending final decision by the agency).

Finally, the cases cited by Carter and Denson as controlling are inapposite. In *Barrentine v. Arkansas-Best Freight Systems, Inc., supra,* the Supreme Court held:

> Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA [Fair Labor Standards Act] in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum, we hold that petitioners' [employees'] claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

450 U.S. at 745, 101 S.Ct. at 1447.

*Barrentine* addresses a tension between federal policies "when the parties to a collective-bargaining agreement make an employee's entitlement to substantive statutory rights subject to contractual dispute-resolution procedures." *Id.* at 734–735, 101 S.Ct. at 1441–42. One federal policy encouraged free negotiation between labor and management; the other created a substantive statutory right to certain minimum wages for employees. The employees' substantive right in that case came only from one source—the FLSA. Thus, the real question was whether the union and employer, in the interest of free negotiation, could subject the substantive right given by the FLSA to a grievance and arbitration procedure which could deny employees that right. The Supreme Court held that, in the absence of congressional intent to that effect, they could not.

In contrast, Carter and Denson allege conduct by Veterans Administration officials violating substantive rights recognized under the contract, the Civil Service Reform Act, and the Constitution. If nothing else, the Civil Service Reform Act created substantive rights to union membership and participation which are more extensive than those same rights as protected by the first amendment. Congress created detailed procedures to effectively protect those substantive rights, as it could have created procedures to effectively protect FLSA minimum wage rights. *Barrentine* did not discuss the exclusivity of such procedures; it only held that, as a matter of congressional policy, the parties to a collective bargaining agreement could not follow a grievance procedure which could deny substantive FLSA rights.

Likewise, *United States v. Professional Air Traffic Controllers Organization (PATCO), supra,* does not conflict with our holding in the present action. *PATCO* involved a jurisdictional conflict between two specific statutes dealing with the prevention of strikes by federal employees. When federal air traffic controllers proposed strike action in 1981, the Seventh Circuit decided that the district court's jurisdiction to enjoin such a strike, implied from 28 U.S.C. § 1345 (1976) and 5 U.S.C. § 7311 (1976) long before the Civil Service Reform Act of 1978, survived the passage of that 1978 legislation. Contrary to the context of the instant case, the *PATCO* court relied on past law and specific legislative history underlying the Civil Service Reform Act which indicated that mandatory resort to the FLRA to prevent federal employee strikes was not the intent of the 1978 Congress. *United States v. Professional Air Traffic Controllers Organization (PATCO), supra,* 653 F.2d at 1138–1139.

In sum, we hold that the district court properly dismissed the action brought by Carter and Denson because they failed to

---

pected of private sector arbitrators. The arbitrator in the federal sector is aware that an award in a case such as the one we now consider may be set aside if "not in accordance with law," 5 U.S.C. §§ 7121(f) & 7703(c)(1) (Supp. V 1981), which is a standard of review normally applied to agency action. *See* Comment, *Federal Sector Arbitration Under the Civil Service Reform Act of 1978,* 17 San Diego L.Rev. 857, 868–870 (1980).

follow the exclusive procedures to review their claims of retaliation for union membership and participation created in the Civil Service Reform Act of 1978.[9]

## III. UNION'S CLAIM

The Union asserts that it is entitled to declaratory and injunctive relief from the allegedly unconstitutional actions of Veterans Administration officials to protect against the "chilling effect" those actions have on the first amendment rights of its members besides Carter and Denson. The district court dismissed the Union's claim because the Union could pursue the same issue before the FLRA. We agree with that decision.

Although the gravamen of the Union's claim is virtually identical to that of Carter and Denson, we discuss the Union's claim separately to note an additional factor which supports dismissal of that claim, *i.e.,* the lack of necessity for injunctive or declaratory relief on the Union's claim. The rights which the Union seeks to have declared have already been recognized by this Court and others. Any individual employee alleging violation of such rights has adequate remedy available under the Civil Service Reform Act procedures, and the particular actions contested by the Union in the present case have already been subject to consideration under the grievance procedure provided for in that legislation.

Nonetheless, assuming without deciding that injunctive or declaratory relief would be available to redress the Union's claim, our discussion of the exclusivity of the Civil Service Reform Act procedures is equally applicable to the Union. The improper actions of Veterans Administration officials alleged by the Union are clearly unfair labor practices under 5 U.S.C. § 7116(a) (Supp. V 1981) which the Union could contest before the FLRA under 5 U.S.C. § 7118 (Supp. V 1981). *See id.* § 7103(a)(1) ("person" defined to include a labor organization). The Union can no more avoid the procedures created in the Civil Service Reform Act than can Carter and Denson suing on their own behalf.[10] We therefore affirm the district court's order dismissing the claim of the Union.

## IV. CONCLUSION

For the above reasons, we affirm the order of the district court dismissing each of the appellants' claims for lack of subject matter jurisdiction.

---

**9.** We emphasize that our holding is restricted to the facts before us. We do not decide whether the discharge of a federal employee for constitutionally protected conduct unrelated to the workplace must be raised under the Civil Service Reform Act procedure. For example, the district court might well have independent jurisdiction to review a claim by a federal employee discharged solely because that employee made a public speech expressing politically unpopular views while away from the workplace.

**10.** The Union argues that the Acting Regional Director of the FLRA refused to issue a complaint on its charge because Carter and Denson had already filed individual grievances, thus cutting off the first amendment claim asserted by the Union. This raises a question of the propriety of the Acting Regional Director's action (appealable to the General Counsel of the FLRA under applicable regulations) and does not affect the lack of jurisdiction in the court below or our holding herein. *See supra* note 2. We note that the Acting Regional Director apparently equated the claim of the Union with the claims of Carter and Denson; if the Union were to clearly charge separate unfair labor practices, the FLRA might act on that new charge. Such FLRA action could include a "cease and desist" order, reinstatement and backpay for aggrieved employees, and "such other action as will carry out" the purpose of the *Labor-Management Relations Chapter of the Civil Service Reform Act.* 5 U.S.C. §§ 7118(a)(7)(A), (C) & (D) (Supp. V 1981).