**Joe B. KNIGHT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 105–86C.**

United States Claims Court.

Sept. 8, 1986.

### OPINION

BRUGGINK, Judge.

Pending before the court is Defendant's Motion To Dismiss plaintiff's claim for mileage reimbursement. Defendant argues, pursuant to RUSCC 12(b)(1), that the court lacks jurisdiction over the subject matter of the complaint. For the reasons discussed below, the court concludes that defendant is correct 'and therefore grants its motion.

### FACTS

Plaintiff is a civilian, nonsupervisory employee of the United States Navy, occupy-

ing the position of Ship Surveyor, WD–8, Portsmouth, Virginia. Persons employed in that capacity frequently report directly to the various ship repair facilities where they are to perform their duties rather than to their official headquarters station. Between May 1979 and March 1981, plaintiff was temporarily assigned to duty at New Bern, North Carolina, while retaining an official headquarters assignment of Portsmouth, Virginia, approximately 145 miles away. From March 30, 1981, until August 31, 1981, his temporary assignment was at Little Creek, Virginia, and as of September 1, 1981, it was changed to Norfolk, Virginia. Both of these Virginia locations are within 25 miles of Portsmouth. On April 30, 1981, after having recently been reassigned from New Bern to Little Creek, plaintiff changed his permanent residence from the Portsmouth area to New Bern.

Asserting that he is entitled to reimbursement for the mileage driven on each of the trips he took between his temporary duty station in Virginia and his home in North Carolina during the period from June 26, 1981 until February 27, 1984, plaintiff filed such a claim with the Department of the Navy. The claim was transferred by that agency to the Comptroller General who, on December 26, 1984, denied it.[1] Plaintiff filed the instant action on February 18, 1986, seeking such reimbursement in the amount of $28,179.21.

## PLEADINGS

As its answer, defendant filed a motion to dismiss, asserting that the court lacks jurisdiction over the claim because by law it is to be resolved through another process. Specifically, defendant contends that plaintiff is a member of a collective bargaining unit whose negotiated agreement with the agency establishes the exclusive avenue of recourse for claims to travel reimbursement. Such claims are within

the coverage of the agreement, defendant argues, and therefore must, pursuant to 5 U.S.C. § 7121(a) (1980), be pursued through the grievance system set forth in the agreement, culminating in arbitration rather than appeal to this court. Further, defendant contends that 28 U.S.C. § 1491 (1973) must be read in a consistent fashion with the Civil Service Reform Act, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in various sections of titles 5, 10, 15, 28, 31, 39, and 42 of the United States Code) (CSRA), and that the CSRA specifies that the procedures it establishes are exclusive.

In response, plaintiff asserts that this court has jurisdiction for two reasons. First, plaintiff states that his claim is cognizable under 28 U.S.C. § 1491. He argues that he was never informed of a requirement to file a grievance and that, if there is such a requirement, he should not have been allowed to pursue the claim as he did, through the Comptroller General. In light of this history, plaintiff contends that defendant should be estopped from asserting that the court lacks jurisdiction.

Plaintiff's second argument is that the agency's action constitutes a prohibited personnel practice, so that he may, under 5 U.S.C. § 7121(d), raise the matter under either the negotiated procedure or a statutory procedure, and has elected the latter. Plaintiff contends that defendant's alleged practice of encouraging its employees to use their private vehicles for work and then promising, but not making payment, constitutes a prohibited personnel practice and that therefore defendant should be estopped from asserting a lack of jurisdiction in the Claims Court.

In its response, defendant argues that the United States may not be estopped from contesting jurisdiction in a case since to do so would confer the exclusive power of Congress to waive sovereign immunity upon an individual litigant. In any event, it

---

1. The claim, assigned number B–210660, was denied on the basis that an employee who has not established a permanent residence within a reasonable commuting distance from his work headquarters is not entitled to the travel costs from his residence to an alternate work location which is in the vicinity of his headquarters.

asserts that the conditions necessary for an estoppel to operate are not present in this case. With respect to plaintiff's second argument, defendant contends that 5 U.S.C. § 2302(b)(1) through (11), defining prohibited personnel practices, may not be read to include an allegation of improper failure to provide travel reimbursement, so that plaintiff's claim does not constitute an exception to the exclusivity rule of section 7121(a). Finally, it argues that the type of "statutory procedure" referenced in section 7121(d) is an administrative appeal rather than judicial review.

## DISCUSSION

The issue thus presented for resolution is whether, under the scheme of the CSRA, a matter which is subject to decision under a negotiated grievance system in accordance with 5 U.S.C. § 7121 may be heard by this court. The court concludes that it may not.

The initial point of reference is 5 U.S.C. § 7121(a). It provides:

(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

Unless excluded from the coverage of the collective bargaining agreement,[2] therefore, all grievances[3] must be resolved

through the procedures established by the agreement.

Plaintiff does not contend that the matter of travel reimbursement is excluded from the coverage of the collective bargaining agreement. In this respect, review of the record shows that the Agreement Between Supervisor of Shipbuilding Conversion and Repair, Portsmouth, and International Federation of Professional and Technical Engineers AFL-CIO, Local No. 10, 1981 (the agreement) was in effect for the three-year period beginning June 19, 1981, which includes the entire period at issue in this case. *See* Article XXXI, Section 1. The agreement applies to all employees in the bargaining unit, Article I, Section 1, and the unit includes plaintiff's nonsupervisory Ship Surveyor position. Article I, Section 2. It establishes a grievance procedure which does not specifically except travel reimbursement claims, Article XXV, and provides for the submission to arbitration of grievances which are not satisfactorily settled through the Article XXV procedures. Article XXVI, Section 1. In Article XX, the agreement provides, at Section 1, that the permanent duty station for all covered employees is Portsmouth. That article also discusses the use of private vehicles for official duties, Sections 7 and 8, and specifies at Section 9 that:

When the use of a privately owned conveyance is authorized or approved as advantageous to the Government for travel between the Employee's place of abode and his Temporary Duty Station, instead of reporting to his Permanent Duty Station and thence to the Temporary Duty Station, the Employee is enti-

---

2. A collective bargaining agreement is defined at 5 U.S.C. § 7103(a)(8) as "an agreement entered into as a result of collective bargaining pursuant to the provisions of this chapter."

3. A grievance is defined as follows:
(9) "grievance" means any complaint—
(A) by any employee concerning any matter relating to the employment of the employee;
(B) by any labor organization concerning any matter relating to the employment of any employee; or

(C) by any employee labor organization, or agency concerning—
(i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or
(ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment.
5 U.S.C. § 7103(a).

tled to reimbursement in accordance with Joint Travel Regulations, Volume II.

Based on the above, the court finds that the matter to which plaintiff's complaint relates is covered by the agreement and subject to its terms.

Moreover, unless otherwise specifically excepted, the claim would be subject exclusively to resolution through the grievance procedures by operation of section 7121(a)(1). In similar circumstances, courts have held that matters which generally would be within the authority of the Merit Systems Protection Board (the Board)[4] to review are no longer within its purview if a negotiated agreement provides that they are subject to its grievance provisions. *Bonner v. Merit Systems Protection Board,* 781 F.2d 202 (Fed.Cir.1986); *Moreno v. Merit Systems Protection Board,* 728 F.2d 499 (Fed.Cir.1984); *National Treasury Employees Union v. Cornelius,* 617 F.Supp. 365, 369 (D.D.C.1985). This reasoning has been held to bar review in the Claims Court if the CSRA remedy is an appeal to the Board: "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court." *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985). *See Shelleman v. United States,* 9 Cl.Ct. 452 (1986). Conversely, as stated by the Federal Circuit, the "same cannot be said regarding actions not covered by the CSRA; that is, Congress has not expressly directed litigation elsewhere." *Fausto v. United States,* 783 F.2d 1020, 1022 (Fed.Cir.1986).

Under the circumstances present here, plaintiff's claim is one "covered by the CSRA," and is one as to which "Congress has .... expressly directed litigation elsewhere." *Fausto,* 783 F.2d at 1022. It did so in Title VII of CSRA which, "for the first time enact[ed] into law the rights and obligations of the parties to [the collective bargaining] relationship—employees, agencies, and labor organizations." H.R.Rep. No. 95–1403, 95th Cong., 2d Sess. 38 (1978). As noted above, section 7121(a) provides that the grievance procedures established by the collective bargaining agreement constitute the exclusive remedy for employees who raise issues falling within the scope of the agreement.[5] The congressional purpose is, therefore, served by deferring to the grievance system in this situation, just as it was by deferring to the Board in the earlier cases.

The Eighth Circuit made substantially the same holding in *Carter v. Kurzejeski,* 706 F.2d 835 (8th Cir.1983). In examining the claims of two employees that they had been fired in violation of their constitutional right to join a union, the court held that they were alleging a claim cognizable under the Constitution, but that "[w]e cannot agree, however, that the existence of a constitutional right automatically exempts a claim based on the violation of that right from the exclusivity of arbitral or administrative review procedures, which provides for some judicial review, recognized and created by Congress." *Id.* at 838–39. Noting that the employee had three administrative avenues of review, one of which was to file a grievance under the collective bargaining agreement, the court held that Congress had, therefore, created a comprehensive framework for the resolution of

---

4. The Merit Systems Protection Board is authorized to hear and adjudicate claims of Federal employees, former employees, and applicants for employment on all matters within its jurisdiction under law, rule, or regulation. 5 U.S.C. § 1205(a)(1).

5. The version of section 7121(a) passed by the House of Representatives did not limit the employee to the negotiated grievance procedure for matters covered by the collective bargaining agreement. H.R. 11280, 95th Cong., 2d Sess. 331 (1978); H.R.Rep. 95–1403, 95th Cong., 2d Sess. 55 (1978). The Senate version, in which the corresponding provision was section 7121(a), did. S. 2640, 95th Cong., 2d Sess. 304 (1978); S.Rep. No. 95–969, 95th Cong., 2d Sess. 109–110 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723, 2831, 2832. The conferees, therefore, were explicitly presented with an issue as to the degree of deference to be accorded the grievance procedure. CSRA as enacted follows the Senate approach. H.R.Rep. No. 95–1717, 95th Cong., 2d Sess. 157 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2860, 2891.

such claims and that plaintiffs could not avoid that framework by invoking the court's general federal question jurisdiction. *Id.* at 840.

The existence of a CSRA remedy is controlling. On rehearing in *Fausto,* while reaffirming its earlier decision, the court held:

Recognizing that a Tucker Act remedy is still available to persons like Fausto who are not covered by the CSRA will in no way frustrate the statutory purpose of the CSRA, it will not undermine the congressional preference for an administrative remedy, *see McClary v. United States,* 775 F.2d 280 (Fed.Cir.1985) (employee with right to appeal to MSPB has no independent cause of action in Claims Court), and it will not disrupt administration of the congressional scheme. *See [Block v.] Community Nutrition [Institute],* 467 U.S. [340] at 352, 104 S.Ct. [2450] at 2458 [81 L.Ed.2d 270]. Those dangers might exist if the result of this case were to allow parallel proceedings to progress at the same time, i.e., if there were an alternative route for those covered by the CSRA. But that is not the result. Indeed, barring judicial review here on the government's theory would mean there is " 'no forum' in which [the agency's] actions could or would be challenged." *Id.* Preclusion of such suits does pose a direct threat to realization of the statutory objectives of the Tucker Act and the Back Pay Act; those objectives with respect to persons like Fausto would no longer be realized through the specific remedy provided by Congress.

*Fausto v. United States,* 791 F.2d 1554, 1557 (Fed.Cir.1986).

The court finds that the concern expressed by the court in *Fausto* that an employee who is not allowed to proceed before this court under the Tucker Act, 28 U.S.C. § 1491, would have no forum is not similarly a concern in the instant case, where resort to the grievance system was available. *Cf. Carter,* 706 F.2d 835. Indeed, the purpose of CSRA, the Congressional preference for an administrative remedy, and the desirability of avoiding parallel proceedings could be frustrated if a forum in the Claims Court were available for actions which are properly brought under the grievance system. The court concludes, therefore, that, absent a finding that one of the two bases for jurisdiction asserted by plaintiff applies, his remedy is not before this court.[6]

Plaintiff's first asserted basis is that he was never told that he had to file a grievance, so that defendant should be estopped from denying jurisdiction. The court has no such discretion, however; if it lacks jurisdiction, the action must be dismissed. RUSCC 12(h)(3), which is identical to Rule 12(h)(3) of the Federal Rules of Civil Procedure, provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The rule is that "[t]he parties cannot waive lack of jurisdiction, whether by express consent, or by conduct, nor yet even by estoppel." C. Wright, Law of Federal Courts 17–18, 71 S.Ct. 534, 541–42 95 L.Ed. 702 (3d ed. 1976), *quoted in John C. Grimberg Co. v. United States,* 1 Cl.Ct. 253, 254 (1982), *aff'd,* 702 F.2d 1362 (Fed.Cir.1983). As the Supreme Court has held, "[t]he jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties." *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951). In *Finn,* the Court distinguished cases in which courts could have had jurisdiction

---

6. In *Fausto,* the court noted that plaintiff had the right to file a grievance and did so. Its conclusion that he could, nonetheless, proceed before the Claims Court is not inconsistent with this court's holding inasmuch as the grievance system to which Fausto could resort was not the negotiated grievance system established by CSRA, which provides for arbitration outside the agency and the submission of exceptions to arbitral awards to the Federal Labor Relations Authority under 5 U.S.C. § 7122. Rather it was an administrative grievance system in which final decision-making authority is apparently retained within the agency whose action is challenged.

originally. In such circumstances, estoppel did not endow the court "with a jurisdiction it could not possess." *Id.* at 17, 71 S.Ct. at 541.

In the instant case, by contrast, the court has found that it does not have jurisdiction over a matter committed to the negotiated grievance procedure. Accordingly, it cannot, because of the allegedly misleading actions of the defendant, assert jurisdiction which it does not possess.

Plaintiff's second and final argument is that his claim comes within an exception to the exclusivity of the grievance procedures because he asserts that the agency committed a prohibited personnel practice. The court rejects plaintiff's argument.

Pursuant to 5 U.S.C. § 7121(d), "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both." Even assuming for the sake of argument that defendant's alleged practice of encouraging its employees to use their private vehicles for work and promising, but not providing, payment for their use constitutes a prohibited personnel practice under one of the provisions of section 2302(b)(2)–(11), this court nevertheless does not have jurisdiction to hear the claim. The only exception to the exclusivity mandated by section 7121(a) is for a prohibited personnel practice described in section 2302(b)(1), which relates to discrimination based on race, color, religion, sex, national origin, age, handicapping condition, marital status, and political affiliation. Plaintiff has not charged that the agency's action was in any way discriminatory, and his pleadings cannot be read to imply such an allegation as would come within the purview of section 2302(b)(1).[7]

The court, therefore, may not take jurisdiction over the case on the basis of plaintiff's assertion of a prohibited personnel practice.

## CONCLUSION

For the reasons detailed above, the court holds that plaintiff's claim is committed to the negotiated grievance procedure, that it does not fall within the statutory exception for prohibited personnel practices, and that the court is not vested with jurisdiction because of defendant's alleged actions. Because the court lacks jurisdiction over the subject matter of the complaint, the clerk is directed to dismiss the complaint. No costs shall be assessed.

IT IS SO ORDERED.

---

7. In addition, it appears that the "statutory procedure" referenced in section 7121(d) does not encompass an appeal to this court. The system established by the CSRA provides for certain appeal rights to the Board and to the Equal Employment Opportunity Commission (EEOC). Insofar as it is relevant to the case at bar, it suffices to say that, in general, the EEOC was given jurisdiction over matters involving discrimination, such as most of those set out in section 2302(b)(1). In this context, the reference to a statutory procedure in section 7121(d) as it relates to section 2302(b)(1) would seem to provide the employee with a choice between proceeding before the Board and/or EEOC on the one hand and initiating a grievance on the other. *See generally,* Senate Committee on Governmental Affairs, Civil Service Reform Act of 1978, S.Rep. No. 95–969, 95th Cong., 2d Sess. 110–111 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2831, 2832, *reprinted in* Committee on Post Office and Civil Service, 96th Cong., 1st Sess., Legislative History of the Civil Service Reform Act of 1978, at 2012 (1979). *See also Borrell v. United States International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982) (CSRA does not create a private right of action authorizing direct judicial review of certain claimed prohibited personnel practices).