**William MILLS, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**C.A. No. 96–628L.**

United States District Court, D. Rhode Island.

Sept. 2, 1997.

---

Sean M. McAteer, Cranston, RI, for Plaintiff.

Anthony C. DiGioia, U.S. Atty.'s Office, Providence, RI, (Peter W. Gallaudet, Windsor, CT, of counsel), for Defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

Plaintiff William Mills ("Mills") brings this complaint under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), the Postal Reorganization Act, 39 U.S.C. § 409, and the Rehabilitation Act, 29 U.S.C. §§ 701–797b, against his former employer, the United States Postal Service ("the Postal Service"). Plaintiff argues that he entered into a resignation agreement as a direct result of defendant's coercion and misrepresentations, and that the agreement should therefore be voided. The principal question before this Court is whether Mills can bring an action against the Postal Service before exhausting available administrative remedies.

This matter is presently before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, defendant's motion is granted.

## I. Facts

Unless otherwise noted, the following facts are undisputed. Mills worked for the Postal Service as a mail handler. On March 20, 1995, the Postal Service issued a "Notice of Proposed Removal," notifying Mills of its intention to seek his dismissal.[2] On April 6, 1995, the Postal Service issued a "Letter of Decision of Adverse Action (Removal)" concluding:

> The evidence of record clearly indicates that you have failed to meet the requirements of your position and that you failed to obey a supervisor despite your being made fully aware of your responsibilities in the past through both corrective and progressive actions.

In the same letter, Mills was notified that his termination would become effective as of April 20, 1995.

At a meeting on April 14, 1995, Mills and the Postal Service entered into a last chance agreement ("LCA").[3] The LCA afforded Mills the opportunity to continue working for the Postal Service under certain specified conditions. The LCA required, *inter alia,* that Mills enroll in the Employee Assistance Program ("EAP") for treatment. It was agreed that, if deemed appropriate by an EAP counselor, Mills would begin treatment within ten days of signing the LCA. Mills also was required to undergo random drug screens, the results of which would be reported to his plant manager. In addition, the agreement placed Mills on notice that any violation of the Postal Service Code of Ethical Conduct would be cause for immediate termination.

Mills signed each of the provisions of the LCA. In doing so, he expressly waived his right to appeal any subsequent decisions by his employer, concerning the LCA, or any violation of other applicable Postal Service regulations. Defendant, in turn, agreed to hold Mills' termination in abeyance for twelve months and to do the same with re-

---

**1.** There exists some authority for the proposition that a motion to dismiss for failure to exhaust administrative remedies also may be brought pursuant to Fed.R.Civ.P. 12(b)(1). *See United Auto., Aerospace & Agricultural Workers of America (UAW) v. State Farm Ins. Co.,* 350 F.Supp. 522 (N.D.Ill.1972).

**2.** Mills, in his complaint, alleges that he is a recovering substance abuser and that the Postal Service knew the same. Mills alleges that his status as a recovering substance abuser motivated the Postal Service in its actions. However, the reasons for Mills' termination are unclear from the record, as the March 20, 1995 Notice of Proposed Removal stating such reasons has not been provided to the Court. In any event, the

particular reasons for Mills' removal, as well as the issues surrounding Mills' alleged status as a recovering substance abuser, do not affect the Court's analysis.

**3.** In *U.S. Dep't of Air Force v. FLRA,* 949 F.2d 475, 478 (D.C.Cir.1991), the D.C. Circuit described such agreements as follows:

> "Last chance" agreements are probationary contracts negotiated by an agency with an employee who faces removal or serious discipline for poor performance. In exchange for the employer's withholding the adverse action the employee pledges rehabilitation or job performance improvement in specific ways.

gard to a seven day suspension issued to Mills on November 23, 1994, subject to Mills' compliance with the LCA. If Mills complied with the provisions of the LCA for one year, the termination order would be permanently removed from his record. However, if he did not comply in full, the LCA would be canceled and the termination action would proceed.

On or about February 15, 1996, the Postal Service concluded that Mills had violated the LCA by failing to comply with the EAP program. On February 16, 1996, Mills and his union representative met with representatives of the Postal Service to discuss his alleged LCA violation. Mills was told that his LCA violation would not be reported if he entered into a resignation agreement and, therefore, he would still be eligible to receive disability benefits. Mills subsequently signed a resignation agreement in which he agreed not to seek reinstatement in the Postal Service. Since the resignation agreement cited health concerns, rather than an LCA violation, as the reason for his leaving the Postal Service, Mills' eligibility to receive disability benefits was preserved. The express language of the resignation agreement provided that there was no intimidation, coercion, or duress present with regard to plaintiff's signing of the agreement.

In the present action, Mills seeks rescission of the February 16, 1996 resignation agreement. Such a rescission would have the effect of re-instating him to his former position under the terms of the LCA. He asserts that during the negotiations surrounding the resignation agreement he was suffering severe emotional distress resulting from workplace conditions, harassment from co-workers, and recovery from substance abuse. Consequently, Mills argues that he lacked the necessary capacity to enter into the resignation agreement. He further claims that defendant used threats, misrepresentations and intimidation to coerce him into signing the resignation agreement. In addition, Mills avers that defendant's actions violated the Rehabilitation Act, in that defendant did not reasonably accommodate his substance abuse problem. Finally, Mills contends that he has been deprived of his employment and wages as well as his good name and reputation as a direct and proximate result of the execution of the resignation agreement.

The Postal Service, in turn, argues that because Mills has failed to exhaust the administrative remedies available to him, he may not presently seek rescission of the resignation agreement in federal court.

After hearing oral argument on defendant's motion to dismiss, the Court took the matter under advisement. The motion is now in order for decision.

## II. Standard for Decision

Dismissal under Fed.R.Civ.P. 12(b)(6) is proper where the plaintiff has failed to state a claim upon which relief may be granted. Dismissal on such grounds is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990).

In considering a motion to dismiss, a court must accept all well-pleaded factual averments as true, and draw all reasonable inferences therefrom in the plaintiff's favor. *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994), *cert. denied* 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995); *Iacampo v. Hasbro Inc.,* 929 F.Supp. 562, 570 (D.R.I.1996). However, a court need only give the plaintiff the benefit of all inferences which appear reasonable. *Id.* "While a complaint need only set out a generalized statement of facts, there must be enough information to outline the elements of the pleaders' claim." *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977) (internal quotation omitted).

## III. Analysis

■ Mills brings suit under the Little Tucker Act ("Little Tucker"), the Postal Reorganization Act ("PRA"), and the Rehabilitation Act. However, it is clear that Mills must first exhaust available administrative

remedies afforded him under the Civil Service Reform Act ("CSRA")[4], and/or the applicable collective bargaining agreement ("CBA") prior to bringing an action in this Court.

### A. Civil Service Reform Act

■ Congress enacted the CSRA to replace the inconsistent procedures for administrative and judicial review of adverse employment actions against federal employees. *See United States v. Fausto,* 484 U.S. 439, 444–45, 108 S.Ct. 668, 672–73, 98 L.Ed.2d 830 (1988) (citing S.Rep. No. 95–969, p. 3 (1978)); *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 773–74, 105 S.Ct. 1620, 1624–25, 84 L.Ed.2d 674 (1985). Chapter 75 of the CSRA overhauled the traditional civil service system and created a detailed scheme for review of personnel actions taken by federal agencies. *Id.* The CSRA created a series of procedural devices, including an appeal to the Merit System Protection Board ("MSPB"), for federal employees affected by certain adverse personnel actions, including removal. 5 U.S.C. §§ 7512, 7513(d). Congress created the MSPB to provide an initial administrative review of employment action before any judicial remedy may be sought.

Courts have recognized that the CSRA creates remedies by which covered federal employees may seek redress for improper employment actions. *See Bush v. Lucas,* 462 U.S. 367, 385, 103 S.Ct. 2404, 2414–15, 76 L.Ed.2d 648 (1983); *Roth v. United States,* 952 F.2d 611, 614 (1st Cir.1991); *Montplaisir v. Leighton,* 875 F.2d 1, 3 (1st Cir.1989). Indeed, the Supreme Court has held that the CSRA's comprehensive scheme may in some cases preclude entirely a judicial remedy. *See Fausto,* 484 U.S. at 448–49, 108 S.Ct. at 674–75.[5]

In *Fausto,* for example, the plaintiff was a non-preference member of the Federal Fish and Wildlife Service who had been suspended without pay for thirty days. As a non-preference employee, he had no right to appeal an adverse employment action to the MSPB. He thus challenged his suspension in the Claims Court, seeking back pay under the Back Pay Act, 5 U.S.C. § 5596, and the Tucker Act, 28 U.S.C. § 1491. *Fausto,* 484 U.S. at 443, 108 S.Ct. at 671–72. The Supreme Court held that despite his inability to seek administrative review of his termination, the CSRA nevertheless precluded him from seeking judicial review. *Id.*

■ The First Circuit clearly requires the exhaustion of administrative remedies provided for in the CSRA prior to allowing an aggrieved party to seek a judicial remedy. In *Berrios v. Dep't of the Army,* 884 F.2d 28, 30 (1st Cir.1989), plaintiff alleged that defendants, in failing to provide him with a hearing prior to removal from a governmental position, deprived him of his due process rights under the Fifth Amendment. Defendants filed a motion to dismiss, arguing that the CSRA precluded plaintiff's federal claims. The Court held that the CSRA preempts challenges to personnel actions brought under federal law. *Berrios,* 884 F.2d at 30; *see also Roth,* 952 F.2d at 614 ("In general, a federal employee whose position comes within CSRA's reach may seek redress for the untoward effects of a prohibited personnel practice only through the panoply of remedies that CSRA itself affords."); *Carter v. Kurzejeski,* 706 F.2d 835, 840 (8th Cir.1983) (the CSRA's "procedural framework indicates the care taken by Congress to preserve the rights of aggrieved employees while avoiding the problems of overlapping and inconsistent jurisdiction.").

Courts have upheld the provisions of the CSRA even though its effect appears to limit plaintiffs' remedies. *See Bush,* 462 U.S. at 388, 103 S.Ct. at 2416–17; *Roth,* 952 F.2d at 615. The First Circuit specifically addressed this effect, noting that the fact "that injured employees might be left without a means of

---

4. Pub.L. No. 94–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C. and elsewhere).

5. Chapter 75 of the CSRA applies to employees of the Postal Service. 39 U.S.C. § 1005; *see also Lindahl,* 470 U.S. at 773–74, 105 S.Ct. at 1624–25; *Montplaisir,* 875 F.2d at 3; *Diaz v. United States Postal Service,* 853 F.2d 5, 7–8 (1st Cir. 1988). Chapter 75 creates an express exception to the general rule, embodied in 39 U.S.C. § 410(a), that no federal law dealing with federal employees shall apply to the exercise of the powers of the Postal Service. *Id.*

recovering money damages is a necessary consequence of the (comprehensive) nature of the CSRA." *Roth,* 952 F.2d at 615. The Court further stated: "Congress in its wisdom was fully entitled to prefer administrative enforcement to civil trials." *Id.* (quoting *Montplaisir,* 875 F.2d at 5). As the Supreme Court stated:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed, it is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.

*Bush,* 462 U.S. at 388, 103 S.Ct. at 2416–17.

 Faced with this array of case law construing the CSRA, Mills responds that the PRA and Little Tucker give this Court jurisdiction over this action. Indeed, these statutes do provide general grants of jurisdiction in this Court.[6] This is beside the point. Although parties covered by the CSRA may eventually arrive in federal court, the aforementioned jurisdictional statutes do not require that such parties be allowed to bring suit there initially. *Diaz,* 853 F.2d at 9. While the PRA and Little Tucker do grant jurisdiction, courts have nevertheless required aggrieved parties to exhaust available administrative remedies prior to bringing suit. *See, e.g., Fausto,* 484 U.S. at 443, 108 S.Ct. at 671–72; *Diaz,* 853 F.2d at 9.

At best, Mills presents what appears to be a confrontation between the PRA, Little Tucker and the CSRA. In similar circumstances, courts have held that the CSRA, when applicable, prevails over other less specific jurisdictional grants. *See, e.g., Veit v. Heckler,* 746 F.2d 508, 509 (9th Cir.1984) (CSRA review provisions preempted federal employee's court challenge to Social Security Administration employment evaluation system); *Carter v. Kurzejeski,* 706 F.2d at 840 (CSRA preempted federal employee's claim of tortious and unconstitutional interference with freedom of expression); *Tucker v. Defense Mapping Agency,* 607 F.Supp. 1232, 1240–41 (D.R.I.1985) (CSRA prevails over general grant of jurisdiction of 28 U.S.C. § 1331). As the First Circuit clearly stated:

> The legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions. . . . [T]he history and intent of the CSRA plainly prefigures that collateral district court jurisdiction would impede the ideals of fast, efficient management and greater uniformity in the judicial review process.

*Berrios,* 884 F.2d at 31–32 (internal quotation omitted); *see also Schrachta v. Curtis,* 752 F.2d 1257, 1260 (7th Cir.1985).

 Therefore, based upon both manifest Congressional intent and the governing case law, it is clear that Mills' claim here falls within the scope of the CSRA. Mills does not allege that he exhausted the necessary remedies provided for by the CSRA. Furthermore, requiring Mills to exhaust available administrative remedies prior to seeking judicial relief does not offend public policy. This Court thus holds that the comprehensive framework established by the CSRA precludes this action.[7]

---

**6.** The PRA provides that the federal district courts "shall have original but not exclusive jurisdiction over actions brought by or against the Postal Service." 39 U.S.C. § 409. In addition, Little Tucker confers jurisdiction, concurrent with the Claims Court, over certain actions against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2). These statutes, like the Tucker Act, 28 U.S.C. § 1491, are themselves only jurisdictional statutes and do not create "substantive rights enforceable against the United States for money damages." *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). While Mills in the instant case has not stated an underlying statute to base his claim upon, it is apparent to the Court that the basis for his suit is the Back Pay Act, 5 U.S.C. § 5596(b). The Back Pay Act serves to "authorize retroactive recovery of wages whenever a federal employee has undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of compensation to which the employee is otherwise entitled." *Testan,* 424 U.S. at 405, 96 S.Ct. at 957 (internal quotations omitted).

**7.** Given the above analysis of the CSRA, this Court need not address Mills' claim under the Rehabilitation Act, since his failure to exhaust administrative remedies under the CSRA pre-

## · B. Collective Bargaining Agreement

The Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), requires that a plaintiff covered by a CBA exhaust the contractual remedies thereunder before seeking a judicial remedy. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965); *Roman v. United States Postal Service*, 821 F.2d 382, 388 (7th Cir.1987) (citing *McNair v. United States Postal Service*, 768 F.2d 730, 735 (5th Cir.1985)). An employee falling within the LMRA must, at the very least, seek to redress a grievance through CBA-established arbitration procedures before seeking any judicial enforcement of his rights under the contract. *See Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967) (an employee attempting to exhaust his contractual remedies is required to use the procedures set out in the CBA); *see also Huffman v. Westinghouse Elec. Corp.*, 752 F.2d 1221, 1223 (7th Cir. 1985). The LMRA has been applied to postal employees who bring employment-related grievances under the PRA. *See Roman*, 821 F.2d at 386; *McNair*, 768 F.2d at 735.

The CBA governing postal employees offers a complex and thorough process through which an aggrieved employee may pursue a claim. Pursuant to Section 15 of the CBA, such an employee must register his complaint at a Step 1 level. Step 1(d) allots an employee or the union 14 days, from the time the employee learned of the grievance, to discuss the problem with an immediate supervisor. The immediate supervisor has the authority to settle the dispute after such a meeting. Such a decision may be appealed to successively higher steps 2, 3 and 4, with the ultimate prospect of final and binding arbitration.

The CBA also provides safeguards to protect both sides. For example, if a grievant fails to meet any of the time limits, he effectively waives the grievance. Conversely, if management fails to schedule a meeting within an agreed upon time period, the griev-ance is automatically elevated to the next step.

Essentially, Mills concludes that he is not bound by the CBA because he is no longer a Postal Service employee. Defendant, however, claims that while Mills is no longer in its employ, he remains limited to CBA remedies in matters pertaining to work-related grievances.

Courts have held that a resignation (whether voluntary or involuntary) is governed by the CBA. *Roman*, 821 F.2d at 387–88; *see also Mitchell v. Pepsi–Cola Bottlers Inc.*, 772 F.2d 342, 347 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). In *Roman*, for example, the plaintiff was a former federal employee. He argued that he was not obligated to pursue contractual remedies because the applicable collective bargaining agreement only referred to "employees." *Roman*, 821 F.2d at 386–387. The First Circuit held that while he was technically no longer an "employee", his involuntary resignation claim implicated employer-labor relations which were governed by the CBA. Therefore, he would be required to exhaust contractual remedies under the CBA before turning to the federal court. *Id.* at 387; *see also Vaca*, 386 U.S. at 184, 87 S.Ct. at 913–14; *Republic Steel*, 379 U.S. at 652–53, 85 S.Ct. at 616–17. This result was, of course, in keeping with the Supreme Court's longstanding holding that an employee asserting a resignation claim must attempt to exhaust his contractual remedies according to procedures set out in the CBA before turning to a federal court. *See, e.g., Vaca*, 386 U.S. at 184, 87 S.Ct. at 913–14; *Republic Steel*, 379 U.S. at 652–53, 85 S.Ct. at 616–17.

The Postal Service CBA provides ample opportunities for grievances to be aired. Mills has failed to exhaust or even explore any remedies established under the CBA. His failure to do so clearly bars his resort to this Court. *See Vaca*, 386 U.S. at 184, 87 S.Ct. at 913–14; *Republic Steel*, 379 U.S. at

cludes his claim. Moreover, even if the Court's analysis of the CSRA were incorrect, Mills' claim would fail because in order to recover under the Rehabilitation Act, an aggrieved party is required to initiate contact with a counselor within 45 days of the grievance, or within 45 days of the effective date of a personnel action. 29 CFR 1614.105(a)(1). Mills has made no allegation in the pleadings that such a meeting took place or that he even requested such a meeting.

652–53, 85 S.Ct. at 616–17; *Roman,* 821 F.2d at 386–387.

This Court recognizes that, under certain conditions, an employee bound by a CBA may nevertheless be excused from the duty to exhaust the administrative remedies provided thereby. For example, the Supreme Court has stated that an employee may be released from exhausting contractual remedies: (1) where the conduct of the employer amounts to a repudiation of the contractual remedies, so that the employer "is estopped by his own conduct to rely upon unexhausted grievances and arbitration procedures as a defense to the employee's cause of action," *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914; (2) where resort to the grievance procedures provided would be wholly futile, *see Glover v. St. Louis–San Francisco Rwy.,* 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed.2d 519 (1969); or (3) where a union has breached a duty of fair representation owed to the employee. *See Vaca,* 386 U.S. at 185, 87 S.Ct. at 914.

However, in this case, Mills pleads no facts that would satisfy any of these exceptions to the exhaustion requirement. Because no such exception applies, Mills' failure to proceed under the remedial scheme of the CBA provides an independent source for dismissing the claim asserted here.

### C. Waiver

As a final argument, Mills claims that he was coerced into signing the resignation agreement, and that it should therefore be voided. The presence or absence of coercion, however, is plainly immaterial in light of this Court's foregoing analysis regarding Mills' failure to exhaust his administrative and contractual remedies. Quite simply, even assuming *arguendo* that Mills had been coerced into signing the resignation agreement, and that it was thus void, Mills would still be bound by the LCA, under which he waived his right to pursue administrative remedies and under which his termination would become effective. Thus, it is actually the presence or absence of coercion surrounding the waiver in the LCA, not the resignation agreement, that is relevant.

If an employee waives administrative appeal rights through an LCA freely and absent duress, courts will uphold the waiver.

*See Stewart v. United States Postal Service,* 926 F.2d 1146, 1148 (Fed.Cir.1991). In this case, it is undisputed that Mills entered into the LCA freely. Thus, he has waived his rights to administrative remedies.

### IV. Conclusion

This result indeed leaves Mills in an undesirable position. As noted above, the CSRA precludes judicial review of an adverse federal employment action, absent some attempt by an aggrieved party to exhaust administrative remedies. Mills has made no such attempt, and thus this Court may not hear his case. That he has validly waived his right to such administrative remedies does not suddenly allow him access to federal court where it otherwise would not exist; such a result would effect an end run around the CSRA. In the final analysis, the LCA violation left Mills with two unenviable options: to have his termination reinstated or enter into the resignation agreement. This Court will not grant plaintiff a third option after the fact by allowing him to pursue a remedy in federal court.

For the foregoing reasons, defendant's motion to dismiss is granted.

It is so ordered.