**Edward E. LOHF, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, et al., Defendants.**

No. 96–4088–RDR.

United States District Court, D. Kansas.

March 6, 1998.

Ira Dennis Hawver, Ozawkie, KS, for plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant Marvin Runyon.

Michael T. Manley, Charles R. Schwartz, Blake & Uhlig, P.A., Kansas City, KS, Susan L. Catler, O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for Defendant Moe Biller.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This action alleges a variety of claims arising from plaintiff's employment, suspension, and removal from employment as a postal worker with the United States Postal Service (USPS) in Topeka, Kansas. Defendants are: Marvin Runyon as Postmaster General of the USPS and Moe Biller as President of the American Postal Workers Union (APWU). Both Runyon and Biller are being sued in their official capacities. There is no substantial allegation that either Runyon or Biller personally participated in any of the actions alleged in this case or that either man should be personally liable for any judgment.

This case is now before the court upon the motion to dismiss of defendant Runyon and the USPS and the motion to dismiss or for summary judgment filed by defendant Biller and the APWU. The motion to dismiss by the USPS is supported by a list of "material facts as to which no genuine issue exists." Normally, such lists are part of summary judgment motions because motions to dismiss are confined to matters alleged within the complaint. Accordingly, the court shall treat the motion to dismiss as a motion for summary judgment. This approach does not place plaintiff at a disadvantage. Plaintiff has responded in detail to the list of facts in the motion to dismiss and has provided an extensive amount of material beyond the pleadings. Thus, we consider plaintiff on notice that the court may treat the motion to dismiss as a motion for summary judgment. *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n. 2 (10th Cir.1996).

PLAINTIFF'S CLAIMS

Plaintiff is asserting violations of: the Constitution, the Postal Reorganization Act, 39 U.S.C. § 401; the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–16a ("Title VII"); the Rehabilitation Act, 29 U.S.C. § 701 *et seq.;* the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA"); the Civil Rights Act of 1871, 42 U.S.C.

§ 1985(3); the Federal Tort Claims Act, 28 U.S.C. § 1346; the Vietnam Era Veterans Readjustment Assistance Act of 1974, 38 U.S.C. § 4211 *et seq.;* the Veterans Preference Act, 5 U.S.C. § 2108; and numerous federal statutes governing federal personnel administration. The gist of plaintiff's claims is that the USPS broke the law and discriminated against him when it directed that plaintiff be placed on restricted sick leave status and then later ordered that plaintiff be placed on sick leave pending completion of an inpatient program for the treatment of post-traumatic stress syndrome. Plaintiff asserts that the USPS continued its illegal and discriminatory acts by removing plaintiff from employment. Plaintiff contends that the acts taken against him were intended to discriminate or had the impact of discriminating against male veterans over the age of 40 who suffered from a physical or mental disability. Plaintiff further contends that the actions were taken without procedural protections guaranteed by federal law and the Constitution. In addition, plaintiff asserts that the APWU did not protect his interests and, instead, conspired with the USPS to deprive plaintiff of his employment rights without the protections he is guaranteed under the law. Thus, plaintiff alleges that the defendant Biller and the APWU breached its duty of fair representation.

Plaintiff also mentions intentional infliction of emotional distress, 29 U.S.C. § 412, and 42 U.S.C. §§ 1981a and 1986 in his most recent complaint, although any such claims are not the focus of discussion in the instant motions.

SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

## RUNYON'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The following facts appear uncontroverted for purposes of the motion of defendant Runyon. In August 1993, plaintiff worked as a laborer/custodian for the USPS. On August 12, 1993, the USPS sent a letter to plaintiff informing him that he was being placed on restricted sick leave status. This action required that plaintiff provide medical documentation when he applied for sick leave. The letter indicated that if plaintiff's work attendance improved, he would be removed from restricted sick leave.

On or about the same day, plaintiff delivered to the USPS a note from Dr. Frances Garner, a clinical psychologist for the Veterans Administration. The letter indicated that Dr. Garner had seen plaintiff in connection with the post-traumatic stress clinic team. It further stated:

> I was called to see Mr. Lohf Wednesday, August 11, who at the time appeared to be in crisis. There is a definite possibility that the patient is in danger of hurting himself or someone else. He is aware of this danger and has agreed to work with me to protect against the danger.

I have advised that he take off work if he feels violence is imminent and remain off work until I can see him to evaluate whether or not hospitalization is necessary.

After receiving this letter, on August 23, 1993 the USPS placed plaintiff on administrative leave and ordered plaintiff to attend a fitness-for-duty (FFD) examination. Dr. Robert Schulman performed the FFD examination. He recommended that plaintiff not return to work and that he participate in "an inpatient program for veterans who have sustained post-traumatic stress syndrome." The report further indicated that plaintiff was "willing to participate in the program again and following that should be able to return to his normal vocational duties."

Plaintiff was placed on sick leave status, as medically unable to work on August 27, 1993.

On September 8, 1993, plaintiff contacted an EEO counselor for the USPS and complained of discrimination based on a physical or mental handicap. This complaint was based on plaintiff's being placed on restricted sick leave. Plaintiff attributed this action to Dan Taylor and asked that he be removed as plaintiff's supervisor. The EEO counselor spoke to management representatives who stated that: Mr. Taylor would not be removed as supervisor; restricted sick leave was appropriate action; and administrative leave would not be authorized. Consequently, plaintiff was offered the options of withdrawing his initial complaint or filing a formal complaint.

On September 22, 1993, as a result of the FFD exam, the USPS informed plaintiff that he would not be allowed to return to duty until he completed a 90–day inpatient program for post-traumatic stress disorder. He was further informed that he was being carried on sick leave and that failure to comply with the program and update his manager as to his progress "may result in disciplinary action up to and including dismissal."

On December 7, 1993, plaintiff filed a formal complaint of discrimination with the EEO, alleging age and handicap discrimination. Plaintiff asked that he be reinstated to a position under a different supervisor and that he be placed on administrative leave from September 22, 1993 with his sick leave

restored from that date. The complaint was accompanied by a lengthy set of attached materials. These materials set out a history of how plaintiff's stress condition had been aggravated by the alleged actions of USPS employees in restructuring his custodial duties. For example, plaintiff strongly objected to being permanently assigned to the work room floor. Plaintiff alleged that these actions were discriminatory and contrary to personnel procedures. The bulk of the materials contained documents relating to the complaints of other male postal employees with stress conditions.

On January 18, 1994, the EEO wrote plaintiff acknowledging receipt of his complaint and stating that the scope of the investigation would be limited to his placement on restricted sick leave on August 12, 1993, which plaintiff alleged was discrimination on the basis of physical disability. Plaintiff was further told: "If you do not agree with the defined issue(s), you must provide us with sufficient reasons to substantiate your objections, in writing, within seven (7) calendar days of receipt of this letter."

Plaintiff entered an inpatient program for PTSD in June 1994 and completed the program in September 1994. In October 1994 the Veterans Administration (VA) awarded plaintiff 100% disability based upon posttraumatic stress syndrome.

In December 1994, plaintiff was asked by management whether he intended to return to duty. He was also informed that management needed to discuss the issue with him. The letter alleged that plaintiff had previously mentioned to a supervisor that he would not be returning to work.

On March 17, 1995, a VA staff psychiatrist working with plaintiff wrote to USPS management that plaintiff was continuing treatment in an outpatient PTSD program and that he continued to be unable to return to work. The letter further stated that "no further determination or assessment regarding his employability can be made until his current judicial problems with USPS, and the attendant stress that he is experiencing as a result of that, are resolved."

On June 6, 1995, the USPS issued a notice of proposed removal based on plaintiff's medical inability to perform the duties for which he was hired. On July 10, 1995, a letter of decision was issued and plaintiff was removed from employment effective July 14, 1995.

Plaintiff filed a grievance with the USPS concerning his removal. A representative of the local union represented plaintiff in the grievance procedure. At "Step 3" of the grievance procedure, an agreement was reached whereby plaintiff would be removed from the employment rolls, but would be given priority consideration for reinstatement should he recover in the future and provide medical documentation of his ability to work. This agreement was reached on September 29, 1995. Plaintiff received a copy of the settlement agreement no later than November 11, 1995.

On January 17, 1996, the EEO dismissed plaintiff's complaint regarding restricted sick leave status as moot in light of plaintiff's removal from employment. Plaintiff received a copy of this decision on January 20, 1996.

Plaintiff filed this case on May 17, 1996. Prior to filing this case, plaintiff had not filed an administrative tort claim with the USPS.

On or about December 15, 1995, plaintiff filed a motion to intervene in an appeal before the Merit Systems Protection Board (MSPB) by a former co-worker. Plaintiff alleged that he had been placed on enforced leave for more than fourteen days and that the USPS had engaged in disability discrimination and other prohibited personnel practices. An administrative law judge determined that his action was untimely filed and must be dismissed for lack of jurisdiction. This holding was reversed by an MSPB appeal panel on July 10, 1996. The panel construed the placement of plaintiff on enforced leave from September 22, 1993 until September 27, 1994 (after he had completed the inpatient PTSD program) as a constructive suspension without due process. The panel remanded the matter to give plaintiff the opportunity to show that he was diligent in filing an appeal of his alleged constructive suspension after learning that he could do so.

Briefs filed in connection with the instant motions indicate that the administrative law

judge determined again on remand that the claim was untimely filed. This holding was affirmed on appeal to the MSPB on December 6, 1996.

*Constitutional claims*

■ One of plaintiff's many theories of relief is a claim that the USPS violated plaintiff's constitutional rights under the First and Fifth Amendments to the Constitution. However, the USPS is "[a]n independent establishment of the Executive Branch of the government of the United States ..." 39 U.S.C. § 201. As such the ability to sue or be sued is controlled by the federal government. See *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (sovereign immunity of USPS waived as to interest awards). Although Congress has allowed the USPS to sue and be sued under certain circumstances (39 U.S.C. § 401), this provision has not been construed as a general waiver of sovereign immunity. Many cases support the proposition that the USPS and its officials cannot be sued for constitutional torts arising from an employment context. See *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 483–486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (*Bivens* actions may not be brought against the United States); *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir.1997) (constitutional claim by federal employee in employment discrimination action preempted by remedy under Title VII); *Pereira v. U.S. Postal Service*, 964 F.2d 873, 877 (9th Cir.1992) citing, *McCollum v. Bolger*, 794 F.2d 602 (11th Cir.1986) *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Ellis v. USPS*, 784 F.2d 835, 839–40 (7th Cir.1986)(rejecting a *Bivens* claim); *Broussard v. USPS*, 674 F.2d 1103, 1112 (5th Cir.1982)(no *Bivens* claim against USPS supervisors); *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 105 n. 9 (2d Cir.1981).

Following this case precedent, the court shall dismiss plaintiff's constitutional claims.

*Violations of the collective bargaining agreement, 39 U.S.C. § 1208(b)*

■ Plaintiff alleges that the USPS violated the collective bargaining agreement between the USPS and the APWU. Such claims are considered analogous to claims brought by employees against private employers under § 301(a) of the Labor Management Relations Act. *Bacashihua v. United States Postal Service*, 859 F.2d 402, 405 (6th Cir.1988). An individual employee generally may not sue his employer for a breach of the collective bargaining agreement until he has attempted to exhaust any grievance or arbitration remedies provided in the agreement. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). An exception to the exhaustion rule exists where the employee has been prevented from exhausting his remedies by his union's wrongful refusal to process his grievance. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In such a case, the employee must prove that the union breached its duty of fair representation before he can proceed with his suit against the employer. *Id.*, 386 U.S. at 185; *Nelson v. Holmes Freight Lines, Inc.*, 37 F.3d 591, 594 (10th Cir.1994).

■ Any claim of a breach of the duty of fair representation must be brought within six months. *DelCostello*, 462 U.S. at 169–171; *Cohen v. Flushing Hospital and Medical Center*, 68 F.3d 64, 67 (2nd Cir.1995); *Lucas v. Mountain States Telephone & Telegraph*, 909 F.2d 419, 420 (10th Cir.1990). "[A]n employee's cause of action for breach of the duty of fair representation accrues when 'the grievance procedure [is] exhausted or otherwise [breaks] down to the employee's disadvantage.'" *Cook v. Columbian Chemicals Co.*, 997 F.2d 1239, 1241 (8th Cir.1993) quoting, *Proudfoot v. Seafarer's International Union*, 779 F.2d 1558, 1559 (11th Cir. 1986); see also, *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir.1983) (hybrid action against employer and union accrues when union decides not to pursue grievance further). In this instance, the evidence proves beyond reasonable contradiction that plaintiff was aware that his grievance had been settled to his alleged disadvantage by November 11, 1995 when he received a copy of the settlement agreement. Plaintiff did not bring this case within six months of that date.

■ Another exception to the requirement of exhausting the grievance procedure exists where the employer has "repudiated" the

collective bargaining agreement's remedial procedures. *Vaca*, at 185. Repudiation occurs when the employer "proclaims that it no longer considers the obligation to arbitrate binding .... " *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 692 (7th Cir.1987). There is no claim or evidence of repudiation in this case.

■ Plaintiff contends, especially in response to the same arguments advanced by the APWU, that the time for filing his claim was tolled by the proceedings before the MSPB. Plaintiff cites *Trent v. Bolger*, 837 F.2d 657 (4th Cir.1988) in support of his argument. We reject this contention.

■ The plaintiff in *Trent* made a timely claim before the MSPB which was considered sufficient to toll the time for bringing a claim for breach of the duty of fair representation. In this case, plaintiff's appeal to the MSPB was untimely. An untimely administrative claim does not toll the time for bringing an action in court. See *Zipes v. Trans World Airlines*, 455 U.S. 385, 392–98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court); *Higgins v. New York Stock Exchange*, 942 F.2d 829, 834 (2nd Cir.1991) (parties may not toll limitations periods at their own option by instituting administrative proceedings thereby forcing defendants to defend otherwise untimely actions); cf., *McGinty v. U.S.Dept. of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990) (where complainant is to blame for absence of an administrative ruling on the merits, he has failed to comply with administrative exhaustion requirement). Accordingly, the court shall dismiss plaintiff's claim of breach of the collective bargaining agreement against the USPS and plaintiff's claim of breach of the duty of fair representation against the APWU as untimely filed.

*Vietnam Era Veterans Readjustment Assistance Act (VEVRA) and Veterans Preference Act (VPA)*

■ The USPS asks for summary judgment against plaintiff's claims under VEVRA, 38 U.S.C. §§ 4211–4214, and VPA, 5 U.S.C. § 2108. The USPS contends that there is no private right of action under these statutes. We agree. *Antol v. Perry*, 82 F.3d 1291, 1296–98 (3rd Cir.1996) (no right of action under VEVRA); *Wikberg v. Reich*, 21 F.3d 188, 189 (7th Cir.) *cert. denied*, 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994)(same); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir.1989) (same); *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20 (1st Cir.1988)(no private right of action under VEVRA against federal contractors); *Taydus v. Cisneros*, 902 F.Supp. 278, 282 (D.Mass.1995)(no right of action under VEVRA and VPA); *Wilson v. Amtrak National Railroad Corp.*, 824 F.Supp. 55 (D.Md. 1992)(same); *Philippeaux v. North Central Bronx Hospital*, 871 F.Supp. 640, 647 (S.D.N.Y.1994)(no implied right of action under VPA or right enforceable under § 1983). Therefore, the court shall grant summary judgment against these claims.

*Federal Tort Claims Act*

The USPS contends that plaintiff's claim under the Federal Tort Claims Act must be dismissed because plaintiff failed to satisfy the legal prerequisite of filing an administrative claim. 28 U.S.C. § 2675(a). Plaintiff concedes this point and, therefore, summary judgment shall be granted against this claim.

*42 U.S.C. § 1985(3)*

■ The USPS has asked for summary judgment against plaintiff's claim under 42 U.S.C. § 1985(3). The court shall grant this request. As noted previously, the USPS is an entity of the United States. The United States may not be sued without its consent, and the United States has not consented to be sued under the civil rights statutes, including § 1985. See *Unimex, Inc. v. United States Dep't of Housing and Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir.1979) (citations omitted); *Hohri v. United States*, 782 F.2d 227, 245 n.43 (D.C.Cir.1986) (holding that provisions of 42 U.S.C. §§ 1981, 1983, 1985 and 1986, "by their terms, do not apply to actions against the United States"), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir.1982) ("It is well established ... that the United States has not waived its immunity to suit

under the provisions of the [Civil Rights Act]"); *Biase v. Kaplan,* 852 F.Supp. 268, 289–90, n. 18 (D.N.J.1994) (§ 1985 claim asserted against individual defendants in their official capacities is barred by doctrine of sovereign immunity); *Kaufmann v. U.S.,* 840 F.Supp. 641, 648 (E.D.Wis.1993); *Proffitt v. U.S.,* 758 F.Supp. 342, 345 (E.D.Va.1990). Therefore, the plaintiff's claims against the United States will be dismissed for lack of subject matter jurisdiction.

 Additionally, the fact that the plaintiff is suing Marvin Runyon in his official capacity means that Runyon could not have personally participated in a conspiracy to deprive the plaintiff of his civil rights. Moreover, because he allegedly acted in his official capacity, Runyon was not a "person" for purposes of satisfying § 1985's requirement that "two or more persons" conspired together. See *Santiago v. New York State Dept. of Correctional Services,* 725 F.Supp. 780, 783–84 (S.D.N.Y.1989) *rev'd on other grds,* 945 F.2d 25 (2nd Cir.1991) *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992)(holding that an agency is not a "person" under § 1985(3) and noting that agency officials acting in their official capacities are not "persons" under § 1983, a term which has the same meaning under § 1985).

Furthermore, permitting plaintiff to bring a claim under § 1985 would undermine the Congressionally-created, preemptive scheme for dealing with employment discrimination claims by federal employees—i.e., Title VII. See *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 376–78, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (holding that if violation of Title VII could be asserted through § 1985(3), complainant could avoid most, if not all, of the detailed and specific provisions of Title VII); *Brown v. GSA,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (dismissing § 1981 claim because Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination").

 Finally, the court notes that because plaintiff does not have a viable claim under § 1985(3), he may not raise a claim under § 1986. *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir.1985).

*Appeal from MSPB*

Defendant argues that this court does not have jurisdiction to consider an appeal of any decision by the MSPB. This court's jurisdiction over such matters depends upon the MSPB making a final decision upon the merits of a discrimination claim. *Wall v. United States,* 871 F.2d 1540, 1543 (10th Cir.1989) *cert. denied,* 493 U.S. 1019, 110 S.Ct. 717, 107 L.Ed.2d 737 (1990). That did not happen in this case. Accordingly, plaintiff's attempted appeal of the MSPB order shall be dismissed.

*Title VII; ADEA; Rehabilitation Act*

The USPS contends that plaintiff's claims under Title VII, the Rehabilitation Act and the ADEA must be dismissed for failure to timely exhaust administrative remedies. The following uncontroverted facts appear to support this contention.

On December 7, 1993, plaintiff filed an "EEO Complaint of Discrimination in the Postal Service." On the form, plaintiff checked "age" and "handicap" as the type of discrimination. The form was submitted with a package containing more than one hundred pages of material dealing with the complaints of plaintiff and other postal workers. On January 18, 1994, an appeals review examiner wrote plaintiff with reference to his December 7, 1993 complaint of discrimination. This letter listed the issue in question as whether there was discrimination based on physical disability when a supervisor placed plaintiff on restricted sick leave. Plaintiff was informed that if he did not agree with the "defined issue(s)", then he "must provide us with sufficient reasons to substantiate your objections in writing, within seven (7) calendar days of receipt of this letter." Plaintiff was also informed:

After 180 calendar days from the date of filing your formal complaint, you may file a civil action in an appropriate U.S. District Court if the Postal Service has not issued a final decision on your complaint. If you decide to appeal to the Office of Federal Operations, EEOC, you may file a civil action in an appropriate U.S. District Court within 90 calendar days after your receipt of the EEOC's decision. If you do not receive a decision on your appeal with-

in 180 calendar days from the date of your appeal, you may file a civil action.

On an EEO Investigation Report completed as a result of plaintiff's complaint, the investigator wrote that plaintiff was alleging "Physical Disability discrimination when he was placed on restricted sick leave by his supervisor." The investigation was completed on May 2, 1994. Plaintiff requested a hearing before an EEOC administrative judge. Once again, the issue on appeal was defined as whether plaintiff was discriminated against on the basis of his disability when he was placed on restricted sick leave. On August 31, 1995, after plaintiff had been removed from employment, plaintiff withdrew his request for a hearing and the case was returned from the EEOC to the USPS for the issuance of a final agency decision. On December 15, 1995, plaintiff attempted to intervene in the appeal of a co-worker before the MSPB. Plaintiff's appeal was construed as limited to the issue of whether plaintiff had been constructively suspended. Ultimately, this appeal was determined to be untimely.

On January 17, 1996, the Postal Service issued its "final agency decision" regarding plaintiff's discrimination complaint. The decision was that plaintiff's complaint was moot because plaintiff had been removed from employment and the time limits for appealing his removal had expired. Plaintiff was informed that he could file a civil action in U.S. District Court within 90 days or that he could file an appeal with the Office of Federal Operations, EEOC within 30 days. Records indicate that plaintiff received a copy of the "final agency decision" on January 20, 1996. The complaint in this case was filed on May 17, 1996, more than 90 days after plaintiff received the "final agency decision."

The necessity of exhausting administrative remedies prior to bringing an action under Title VII was discussed by the Tenth Circuit in *Khader v. Aspin,* 1 F.3d 968, 970–71 (10th Cir.1993):

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite" to instituting a Title VII action in federal court. *Johnson v. Orr,* 747 F.2d 1352, 1356 (10th Cir.1984).

Section 717(a) of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e–16(a), prohibits discrimination in federal employee personnel actions on the basis of race, religion, sex or national origin. The authority to enforce § 2000e–16(a) is vested in the Equal Employment Opportunity Commission. *See id.* at § 2000e–16(b). Although § 2000e–16(c) permits an employee to file suit in federal court alleging a violation of § 2000e–16(a), it is well-settled that administrative remedies must first be fully exhausted. *See Brown v. General Services Administration,* 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–66, 48 L.Ed.2d 402 (1976); *Sampson v. Civiletti,* 632 F.2d 860, 862 (10th Cir.1980)).

The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of "giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer."

The Circuit also noted that the same exhaustion requirements apply to claims brought under the Rehabilitation Act. *Id.* at 971 n. 3.

Under the law governing Title VII and Rehabilitation Act claims, after an agency has investigated a complaint, a claimant has two options: either filing an appeal to the EEOC within 30 days (see 29 C.F.R. § 1614.402) or filing a lawsuit within 90 days (29 C.F.R. § 1614.408(a)). If an appeal is made to the EEOC, then a lawsuit can be filed within 90 days of receiving a right to sue letter. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.408(c).

As discussed in *Jones v. Runyon,* 32 F.3d 1454, 1457–58 (10th Cir.1994), under the ADEA, a federal employee again has two options: either he may bring a lawsuit directly to federal court after giving notice to the EEOC within 180 days of the alleged discriminatory act (29 U.S.C. § 633a(d); *Stevens v. Department of Treasury,* 500 U.S. 1, 7, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991)); or the employee may file an administrative complaint with the EEOC and later file a lawsuit within 90 days of the EEOC decision if he is unsatisfied with the administrative outcome, 29 U.S.C. § 633a(b)-(c).

The charges in any lawsuit should be "like or reasonably related to" the charges made to the EEOC, and may include new acts occurring during the pendency of the charge before the EEOC. *Ingels v. Thiokol,* 42 F.3d 616, 625 (10th Cir.1994).

In the instant case, plaintiff's claims under Title VII, the Rehabilitation Act, and the ADEA suffer from two flaws. First, plaintiff's administrative allegations are not like the allegations he has made in his judicial complaint. For instance, his claim that he was discriminated against by his placement on sick leave pending completion of an inpatient post-traumatic stress syndrome program is not like or reasonably related to his placement on restricted sick leave, which is the sole issue he raised administratively with the EEOC. Additionally, plaintiff waived administrative exhaustion of the age discrimination issue because he did not object to limiting the administrative investigation to the question of discrimination by reason of disability.

The second flaw is that plaintiff did not bring suit in a timely fashion. Plaintiff's lawsuit was filed more than 210 days after the events plaintiff alleges were discriminatory and more than 90 days after the Postal Service issued its final agency decision. For these reasons, plaintiff's claims under Title VII, the Rehabilitation Act, and the ADEA must be dismissed.

Plaintiff has argued that he is in effect appealing the dismissal of a "mixed case" from a decision of the Merit Systems Protection Board (MSPB).[1] This argument fails because plaintiff's claims before the MSPB were held to be untimely. Where the Board does not reach the merits of a claim, the judicial review of such a determination is available only in the Federal Circuit. *Canada v. Runyon,* 898 F.Supp. 754, 757 (D.Colo. 1995) *aff'd,* 92 F.3d 1196, 1996 WL 422074 (10th Cir.1996)(table).

---

1. A "mixed case" is an adverse personnel action that is appealable to the Board where a federal employee or applicant alleges a basis for the action is prohibited discrimination. 29 C.F.R. § 1614.302(a)(1) (EEOC definition of "mixed case complaint"); *Miller v. Department of the*

*Other claims*

Plaintiff's complaint also refers to 42 U.S.C. § 1981a. This statute does not by itself provide a cause of action for employment discrimination. Plaintiff must establish a claim under other statutes before § 1981a may be applied. Plaintiff has failed to do so.

Plaintiff also mentions 29 U.S.C. § 412 in his complaint. This statute provides for a civil action to enforce the "Bill of Rights" of union members as set forth in 29 U.S.C. § 411. However, § 412 has not been construed to give a cause of action against employers. *Hayes v. Consolidated Service Corp.,* 517 F.2d 564, 566 (1st Cir.1975). Accordingly, it may not be applied to the USPS here.

Plaintiff's complaint makes reference to intentional infliction of emotional distress, the state law tort often referred to as "outrage". We believe such a claim is preempted by the CSRA and the Federal Tort Claims Act. See *Petrini v. Howard,* 918 F.2d 1482, 1484–85 (10th Cir.1990).

Finally, we note that plaintiff also refers to several provisions within Title 5 of the United States Code. As discussed later in connection with defendant Biller's motion to dismiss or for summary judgment, the court believes plaintiff may not bring a claim against the USPS under those provisions because plaintiff lacks standing or has failed to comply with the procedural requirements of the CSRA.

*Summary*

For the reasons stated within this order, the court shall grant the motion of USPS and direct that all claims of plaintiff be dismissed.

## DEFENDANT BILLER'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant Biller's motion contains a "statement of the case" which contains certain alleged undisputed facts. Plaintiff has responded to the "statement of the case."

---

*Army,* 987 F.2d 1552, 1554 n. 2 (Fed.Cir.1993); see also, 5 U.S.C. § 7702(a)(1) (MSPB jurisdiction of actions involving discrimination); 5 C.F.R. § 1201.151(a) (defining personnel actions appealable to the Board based on "prohibited discrimination").

After reviewing the pleadings, the following appears to be the uncontroverted factual background of plaintiff's complaint against defendant Biller.

The APWU is an unincorporated labor organization. Defendant Biller is its President. The APWU is the exclusive collective bargaining representative of USPS employees in plaintiff's former position. USPS employees are the exclusive clients of the APWU; it represents no one else. The Topeka Local Chapter of the APWU is chartered by the APWU. But, it is autonomous.

As noted earlier, since it is not alleged that defendant Runyon or Biller had any individual or personal involvement in the events alleged by plaintiff, we assume they are being sued in an official capacity as leaders of the USPS or APWU and that the USPS and the APWU are the actual defendants in this matter.

*Title VII, Rehabilitation Act, ADEA*

The APWU has offered several arguments for the dismissal of plaintiff's claims under Title VII, Rehabilitation Act and ADEA. These arguments are meritorious.

■ Initially, we agree with the APWU that it is not covered by the statutes in question. The Rehabilitation Act prohibits discrimination against persons with a disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). There is no allegation in this case that the APWU operates a program or activity receiving Federal financial assistance, or if it does, that plaintiff experienced discrimination in the operation of that program. Moreover, we do not believe the Rehabilitation Act was intended to apply to the actions of a labor organization in representing or failing to represent the alleged victims of discrimination by the USPS. We join in the observation of the Ninth Circuit in *Herman v. United Brotherhood of Carpenters,* 60 F.3d 1375, 1381–82 (9th Cir. 1995) that there is apparently no published case where a Rehabilitation Act claim has been sustained against a labor union. Moreover, we find the allegations of the complaint inadequate to tie the APWU to the USPS's alleged violations of the statute. Cf., *Leahy*

*v. Board of Trustees,* 912 F.2d 917, 921–22 (7th Cir.1990) (dismissing § 1983 claim against union which refused to take grievance against city college to arbitration, finding insufficient allegations of conspiracy with a state actor); *Storlazzi v. Bakey,* 894 F.Supp. 494, 500–01 (D.Mass.) *aff'd,* 68 F.3d 455, 1995 WL 623676 (1st Cir.1995) (table) (same).

■ We also agree with defendant's contention that the APWU is not a "labor organization" for the purposes of being sued under Title VII and the ADEA. Under Title VII, "labor organizations" may be sued pursuant to 42 U.S.C. § 2000e–2(c) for discriminatory practices based on race, color, religion, sex or national origin. The definition of "labor organization" must be considered in the context of other definitions. A "labor organization" is generally defined under § 2000e(d) as an organization representing "employees" against "employers." However, "employer" is defined to exclude the United States and any corporation owned by the United States. 42 U.S.C. § 2000e(b). It is undisputed that the APWU does not represent employees against any other employer but the USPS, an entity of the United States. Therefore, the APWU is not a "labor organization" which can be sued under Title VII because it does not represent employees against "employers" as the term is defined in Title VII. See *Rojas v. APWU,* Case No. 94–1083–FGT (D .Kan.1995) (Humphreys, M.J.); see also, *Newbold v. United States Postal Service,* 614 F.2d 46, 47 (5th Cir.) *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980)(APWU not a proper defendant under § 2000e–16(c)); but see, *Jennings v. American Postal Workers Union,* 672 F.2d 712 (8th Cir.1982) (APWU is a labor organization under Title VII). The ADEA uses the same or similar definitions of "employer" and "labor organization." 29 U.S.C. § 630(b)(d) & (e). Therefore, plaintiff's claims against the APWU under the ADEA may be dismissed as well.

■ However, even if the APWU was a proper defendant under the statutes in question, dismissal is appropriate because plaintiff has not exhausted his administrative remedies against the APWU. The court has

**1442**

previously noted the importance of exhausting administrative remedies before proceeding with a lawsuit under Title VII, ADEA or the Rehabilitation Act. The APWU has not been named as a respondent in an administrative complaint by plaintiff. This is a fundamental aspect of the administrative process because a party cannot participate in conciliation without notice. See *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)(under Title VII, a timely charge of employment discrimination is a jurisdictional prerequisite). There was no notice given to the APWU in this instance. In essence, no timely administrative charge of discrimination was made against the union. Moreover, the exception to the rule requiring such notice as discussed in *Romero v. Union Pacific Railroad*, 615 F.2d 1303, 1311–12 (10th Cir.1980) does not apply to this situation.

Therefore, defendant has not exhausted his administrative remedies as required prior to bringing a claim against the APWU under Title VII, the ADEA, or the Rehabilitation Act.

Plaintiff cites *Johnson v. Palma*, 931 F.2d 203 (2nd Cir.1991) for the position that a union may be sued under Title VII under certain circumstances. However, this case does not refute the APWU's contention that the APWU is distinguishable from most unions because it serves only employees of a single government agency. Nor does it justify the failure to name the union as a respondent in an administrative complaint. Indeed, it affirms the dismissal of an international union as a defendant because the plaintiff, like the plaintiff in the case at bar, did not name that union as a respondent in the administrative complaints.

In sum, the court shall grant the motion for summary judgment as to plaintiff's Title VII, ADEA, and Rehabilitation Act claims against the APWU.

*Duty of Fair Representation*

■ As noted in the prior discussion of plaintiff's claim for breach of the collective bargaining agreement, the court finds that plaintiff's claim that the APWU breached its duty of fair representation is time-barred. Again, we are considering the fair representation claim as being brought against the APWU, not against defendant Biller as an individual. Such claims may not be made against individual union officials. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–49, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

*Section 1985(3)*

■ The APWU contends that plaintiff's claim under § 1985(3) must be dismissed because plaintiff has failed to allege a proper class-based motivation for the union's alleged wrongdoing. "A violation of section 1985 must include class-based or racially discriminatory animus." *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir.1994) *cert. denied*, 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995) citing, *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Tenth Circuit has held that animus towards a class of handicapped persons is not a basis for a claim under § 1985. *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176–77 (10th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984). Other courts have reached the same conclusion regarding age bias. See *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 527 (2nd Cir.1996). Sex has been considered a class-based characteristic which may provide the basis for a lawsuit under § 1985. *E.g., Volunteer Medical Clinic Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir.1991); but see *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (declining to decide whether gender discrimination provides grounds for a § 1985(3) lawsuit).

■ However, the animus requirement demands that the alleged wrongful action be directed at a class " 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Bray*, 506 U.S. at 272. Here, there is no allegation that the actions taken against plaintiff were motivated by an animus against males or that the actions were taken because of their adverse effects upon men. At most, plaintiff alleges that defendants have acted in a manner which had a discriminatory impact upon male combat veterans. This fails to state a claim of a violation of § 1985(3).

*Title 5*

Plaintiff has asserted that both defendants have acted in violation of plaintiff's rights under §§ 2108, 2301, 2302, 7702, 7901, and 8337 of Title 5 of the United States Code. The court does not believe these sections provide grounds for a cause of action in this court because plaintiff either lacks standing to bring an action under these statutes or has failed to exhaust his administrative remedies under the Civil Service Reform Act. See 39 U.S.C. § 1005 (Chapter 75 of CSRA applies to Postal Service employees); *Roth v. United States,* 952 F.2d 611, 614 (1st Cir.1991) (CSRA provides exclusive procedures for challenging federal personnel decisions); *Petrini v. Howard,* 918 F.2d 1482, 1485 (10th Cir.1990)(the CSRA was intended to provide the exclusive procedure for challenging federal personnel decisions); *Mills v. United States Postal Service,* 977 F.Supp. 116, 120 (D.R.I.1997)(Congress created the MSPB for administrative review before court action may be taken).

Under the CSRA, review by the MSPB is an essential part of the process prior to judicial review. See 5 U.S.C. §§ 7512, 7513. Then appeal is made to the circuit court of appeals, unless it is a "mixed case." See *Wall,* 871 F.2d at 1543. If it is a "mixed case," then appeal is made to a federal district court if the MSPB considers the discrimination claim on its merits. *Id.* at 1542–43.

Plaintiff has not properly exhausted his administrative remedies prior to alleging a violation of his rights under the federal personnel statutes or does not have standing to assert such violations. Accordingly, the court shall dismiss any claims brought directly under these statutes.

*Other claims*

■ As noted before in connection with the claims against defendant Runyon, plaintiff may not proceed under 42 U.S.C. §§ 1981a and 1986 because plaintiff has not satisfied the prerequisite of alleging a valid claim under other statutes. Any claim under 29 U.S.C. § 412 must be dismissed because a labor organization which represents only government workers, such as the APWU, does not qualify as a "labor organization" that may be sued under the statute. See *Celli v.*

*Shoell,* 40 F.3d 324, 326–27 (10th Cir.1994). Moreover, such a claim, if one were proper against the APWU, could well be barred by the statute of limitations. See *Linnane v. General Electric Co.,* 948 F.2d 69 (1st Cir.1991)(suggesting that a six-month limitations period applies to a § 411 claim with allegations similar to a fair representation claim). Finally, with the dismissal of all the federal law claims in this case, the court declines to exercise jurisdiction over any remaining state law claim, such as a claim of outrage. See *Panis v. Mission Hills Bank,* 60 F.3d 1486, 1492 (10th Cir.1995) *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996).

CONCLUSION

In conclusion, for the reasons stated above, the court shall grant summary judgment in favor of defendants against all claims brought by plaintiff.

IT IS SO ORDERED.